United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 18, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 05-11123
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

TIMOTHY JOE EMERSON

Defendant-Appellant

_____
Appeal from the United States District Court
for the Northern District of Texas
(6:98-CR-103)
_____

Before HIGGINBOTHAM, DAVIS, and WIENER, Circuit Judges.

WIENER, Circuit Judge[*]:

After being convicted, Defendant-Appellant Timothy Joe Emerson was sentenced to a term of imprisonment and a term of supervised release. In the written entry of judgment, the district court imposed four special conditions of supervised release on the defendant. The district court, however, had failed to pronounce these four conditions orally during Emerson's sentencing hearing.

After serving his full term of imprisonment, Emerson was

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

released and reported to the United States Probation Office, where he was told that he had to abide by the four special conditions. Emerson refused, contending that he was relieved of these obligations by the district court's failure to impose them orally at sentencing.

In response, the government filed a motion for the district court to hold a modification hearing and amend the conditions of Emerson's supervised release by orally adding the four special conditions. The district court held the modification hearing and orally imposed the special conditions at that time, after finding that they were warranted by Emerson's criminal history.

Emerson now appeals this modification of his supervised release. Satisfied that the district court did not commit reversible error, we affirm.

## I. FACTS AND PROCEEDINGS

In August 2002, a federal grand jury indicted Emerson on three counts of possessing a firearm while under a restraining order, in violation of 18 U.S.C. §§ 922(g)(8), 924(a)(2). That October, a jury returned a guilty verdict on all three counts. In January 2003, the district court held a sentencing hearing, at which time it sentenced Emerson to thirty months imprisonment and three years of supervised release.

During the sentencing hearing, the district court stated,

"Upon your release from incarceration, I am ordering that you serve a 3-year term of supervised release.  You will get a copy of the judgment so you will know what the conditions of supervision are.  There are some standard conditions, as well as special conditions."  The district court, however, never identified or expressly imposed any special conditions during the sentencing hearing.

On the same day as the sentencing hearing, the district court rendered its written entry of judgment.  In the written judgment, the district court imposed the following four special conditions:

> 1.    The defendant shall participate in sex offender treatment services as directed by the U.S. Probation Officer until successfully discharged.  These services may include pyscho-physiological testing to monitor the defendant's compliance, treatment progress, and risk to the community.  The defendant is further ordered to contribute to the costs of services rendered (co-payment) at a rate of at least $10.00 per month.
>
> 2.    The defendant shall not access or loiter near school grounds, parks, arcades, playgrounds, amusement parks, or other places where children under the age of 18 may frequently congregate unless approved in advance by the U.S. Probation Officer.
>
> 3.    The defendant shall neither seek nor maintain employment or volunteer work at any location and/or activity where minors under the age of 18 would congregate without prior permission of the U.S. Probation Officer.
>
> 4.    The defendant shall not date or befriend anyone who has children under the age of 18, unless approved

3

in advance by the U.S. Probation Officer.

Emerson completed his term of incarceration in April 2005 and began to serve his term of supervised release. The following month, he met with U.S. Probation Officer Paul Grover. Emerson and Grover reviewed the conditions of supervised release contained in the written entry of judgment, and Emerson signed an acknowledgment of these conditions.

Approximately two weeks later, Grover went to Emerson's home to discuss sex offender programs. At this time, Grover was informed by Emerson that, as he had not been provided notice of the four special conditions during his sentencing hearing, he considered that they were not applicable to him, so he would not comply with them. Three months later, Emerson refused to stipulate to a joint modification of his supervised release to include the special conditions.

In September 2005, Grover filed a petition requesting that a summons be issued and a hearing held to modify the conditions of Emerson's supervised release. Grover specifically requested that the same four terms originally included in the written entry of judgment be imposed orally. Grover ventured that these modifications were necessary because (1) they were part of the original judgment, and (2) as reflected in the original Pre-Sentence Investigation Report ("PSR"), Emerson had a prior arrest

4

and conviction for sexual assault against a minor. The government subsequently filed its own motion to amend the conditions of Emerson's supervised release, echoing Grover's concerns.

Later that month, the district court held a hearing on the motions to amend, and Emerson was present. U.S. Probation Officers Ricky Chittum, who had prepared the PSR, and Grover, who was handling Emerson's supervised release, testified at the hearing.

Chittum testified that (1) the PSR included information that Emerson had pleaded guilty in 1987 to sexually assaulting his eight-year old step-daughter by digitally penetrating her vagina over 100 times, which he was sentenced to a ten-year term of deferred adjudication; (2) based on his conversations with Emerson prior to learning the details of the sexual assault offense, he understood that Emerson did not accept responsibility for the offense, explaining that he was only teaching his step-daughter to perform self-breast examinations; (3) he knows from his professional experience with sex offenders that they have a recidivism rate of approximately 70% and thus are likely to re-offend; and (4) the addition of the four special conditions was necessary in Emerson's case to meet the objectives and goals of supervised release.

On cross-examination, Chittum acknowledged that Emerson's trial counsel had not been provided with pre-sentencing notice that the four special conditions were being sought, because the special conditions did not appear in the PSR, but only in Chittum's sentencing recommendation to the district court.

Grover recounted the facts and circumstances surrounding Emerson's post-incarceration opposition to the special conditions and acknowledged that he was unaware whether Emerson had received a copy of the written supervised release conditions prior to Grover's visit. He also testified that Emerson owned two computers, which could easily be used to access child pornography, and that, while Emerson was visiting his mother at her retirement home in May 2005, he had contact with his ten-year old daughter, in violation of his divorce decree. Lastly, Grover recommended that the district court modify the terms of Emerson's supervised release to include the four special conditions originally included in the district court's written entry of judgment.

At the conclusion of the modification hearing, the district court granted the motions to amend and modified Emerson's supervised release conditions to add four special conditions that were substantially identical to the ones contained in the original written entry of judgment.

Emerson timely filed a notice of appeal.

## II. LAW AND ANALYSIS

A.    Standard of Review

We review a district court's decision to impose discretionary terms of supervised release for abuse of discretion.[1]    Questions concerning statutory interpretation, however, are reviewed de novo.[2]

B.    Merits

1.    Presence at Sentencing

Emerson's initial issue on appeal is his contention that the district court's original imposition of the four special conditions solely by way of a written judgment violated his constitutional right to be present at sentencing, such that the four conditions cannot be considered as part of his original sentence.  We agree.

A defendant has a constitutional right to be present at his sentencing.[3]  This right stems from the Confrontation Clause of the Sixth Amendment, but is also protected by the Due Process Clause of the Fifth Amendment when the defendant is not actually

---

[1] United States v. Ferguson, 369 F.3d 847, 852 (5th Cir. 2004).

[2] United States v. Naranjo, 259 F.3d 379, 381 (5th Cir. 2001).

[3] United States v. Bigelow, 462 F.3d 378, 380 (5th Cir. 2006).

7

confronting witnesses or evidence against him.[4]  It has also been codified in Federal Rule of Criminal Procedure 43(a)(3).[5]  Thus, if a written entry of judgment conflicts with an oral pronouncement at a sentencing hearing, the oral pronouncement controls and the written entry of judgment must be conformed to the oral pronouncement.[6]

If the differences between the two are merely ambiguities, we look to the district court's intent to determine the actual sentence.[7]  We have previously held, however, that such a difference in a special condition of supervised release presents an actual conflict, not just an ambiguity, for sentencing purposes.[8]

Here, all four of the conditions at issue are special conditions.  Thus, they present conflicts between the oral pronouncement and the written entry of judgment.  Accordingly, the district court erred in imposing the four conditions in its written entry of judgment without having announced them at

---

[4] Id. at 381.

[5] Fed. R. Crim. P. 43(a)(3).

[6] Bigelow, 462 F.3d at 381, 383.

[7] Id. at 381.

[8] United States v. Martinez, 250 F.3d 941, 942 (5th Cir. 2001) (concluding that participation in a drug treatment program was a special condition and thus presented a conflict).

Emerson's sentencing hearing.  Therefore, Emerson's original sentence must be redacted to conform to the oral pronouncement at his original sentencing hearing.  The four special conditions are therefore excised from Emerson's original sentence.

Notwithstanding the fact that the original imposition of the four special conditions violated his constitutional rights, Emerson offers no valid reason why the district court could not lawfully modify his sentence at a post-incarceration hearing, as permitted under 18 U.S.C. § 3583(e).  Thus, to the extent that any such argument might exist, Emerson has waived it.[9]

2.   Modification Hearing

Emerson's second issue on appeal is his contention that the district court's post hoc order modifying the terms of his supervised release violated United States Sentencing Guidelines ("U.S.S.G.") § 5F1.5, because the four special conditions did not have a "reasonably direct relationship" to the offense for which he was convicted.

Section 3583(e)(2) vests a district court, after considering the factors set forth in § 3553(a), with broad discretion to modify a defendant's conditions of supervised release by adding special conditions at any time prior to the expiration or

---

[9] United States v. Valles, 484 F.3d 745, 758 (5th Cir. 2007).

9

termination of the term of supervised release.  In doing so, the district court must afford the defendant the procedural safeguards specified in Federal Rule of Criminal Procedure 32.1(c), and the special conditions must be reasonably related to (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need to afford adequate deterrence to criminal conduct, (3) the need to protect the public from further crimes of the defendant, and (4) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.[10]  To the extent that the district court does impose special conditions, they may not involve a greater deprivation of liberty than is reasonably necessary to achieve the need to deter criminal conduct, protect the public, and provide the defendant with training, care, or correctional treatment.[11]

One of the special conditions that a district court has at its disposal is an "occupational restriction." U.S.S.G. § 5F1.5, however, imposes a higher standard for the imposition of occupational restrictions.[12]  Section 5F1.5 specifically

---

[10] 18 U.S.C. § 3583(e)(2).

[11] Id.

[12] United States v. Mills, 959 F.2d 516, 519 (5th Cir. 1992).

provides:

> (a) The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so, only if it determines that:
>
> > (1) a <u>reasonably direct relationship</u> existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and
> >
> > (2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.
>
> (b) If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.[13]

The purpose behind an occupational restriction is not to punish the defendant, but to prevent the defendant's continued or repeated illegal activities while avoiding a bar to employment that exceeds that needed to achieve the result.[14]

Emerson contends that the second and third special conditions (i.e., access to where children congregate and employment where children congregate) are impermissible

---

[13] U.S.S.G. § 5F1.5 (emphasis added).

[14] <u>Mills</u>, 959 F.2d at 519.

occupational restrictions. This contention is based on the "reasonably direct relationship" language of § 5F1.5(a)(1). Emerson asserts that, as his offense of conviction was possessing a firearm while under a restraining order, these two prohibitions are not reasonably related to his firearm conviction. Rather, he insists, these occupational restrictions were sought because of his prior sexual assault conviction and are reasonably related only to that offense. Thus, contends Emerson, § 5F1.5 disallows the second and third special conditions imposed by the district court. We disagree.

Emerson glosses over the fact that § 5F1.5 only applies to prohibiting a defendant from engaging in "a _specified_ occupation, business, or profession, or limiting the terms on which the defendant may do so."[15] A "specified occupation" as used in § 5F1.5 is one that is the defendant's primary means of supporting himself, not any endeavor from which the defendant has merely earned _some_ money.[16] Neither is § 5F1.5 concerned with whether a special condition might possibly deprive the defendant of a potential occupational opportunity in the future. Rather, its

---

[15] U.S.S.G. § 5F1.5 (emphasis added).

[16] United States v. Paul, 274 F.3d 155, 171 n.18 (5th Cir. 2001) (providing that if the defendant's "primary means of supporting himself" were involved, then he would entitled to the higher degree of scrutiny for occupational restrictions under § 5F1.5).

12

focus is on whether a defendant would be deprived of his pre-existing primary occupation.

These conclusions are supported by the purpose of § 5F1.5. Conditions that would impose occupational restrictions are held to a higher standard because Congress did not want to deprive defendants of their livelihoods without significant justification and thereby mete out additional punishment.[17] By the same token, nothing suggests that Congress had any intention of imposing a higher standard on the imposition of restrictions with merely speculative future occupational opportunities or any activities that might incidentally involve a future occupational opportunity. Otherwise, Congress would have unwittingly and inevitably transformed all space and time restrictions into occupational restrictions, necessitating the application of the higher standard. This cannot be what Congress intended.

According to the PSR, Emerson is a medical doctor, but he has not practiced since December 1998 because of poor health. Although restricting Emerson's access to and employment at places where children congregate could place some tangential hardship on his ability to practice medicine, it does not prevent him from pursuing his present primary means of support.

---

[17] Mills, 959 F.2d at 519.

In addition, Emerson has not shown with any specificity how the two relevant special conditions will restrict his ability to serve as a medical doctor.[18] Emerson has offered nothing more than raw speculation and conclusional statements to support his claim that these special conditions will affect his livelihood. Thus, the two relevant special conditions are not occupational restrictions for purposes of § 5F1.5, and thus are not entitled to a higher standard.

As Emerson does not contend that the imposition of the special conditions violated the requirements of § 3583, we conclude the district court did not err in imposing the second and third special conditions at issue. Moreover, even if it had, we still would not have found an abuse of discretion.

### III. CONCLUSION

We acknowledge that the district court violated Emerson's constitutional rights by imposing special conditions of supervised release in its written entry of judgment when it had failed to pronounce them orally at sentencing. This error was rendered nugatory, however, when the district court held a post-incarceration modification hearing and orally amended Emerson's sentence to include the special conditions. Given that none of

---

[18] United States v. Rearden, 349 F.3d 608, 622 (9th Cir. 2003).

14

the four special conditions constituted an occupational restriction, none was subject to a higher standard, rendering the conditions subject to the standard § 3583 sentence-modification requirements. Based on the applicable law and our extensive review of the parties' briefs and the record on appeal, we are satisfied that the district court did not abuse its discretion under § 3583(e) in imposing the special conditions of supervised release at the conclusion of the modification hearing convened and conducted for that purpose.

AFFIRMED.