# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 9, 2009

Charles R. Fulbruge III
Clerk

No. 07-51044

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

GARY LEE RODRIGUEZ

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, JOLLY, Circuit Judge, and MONTALVO, District Judge.[*]

FRANK MONTALVO, District Judge:

Gary Lee Rodriguez ("Rodriguez") pleaded guilty to three counts of assault on a federal officer pursuant to 18 U.S.C. § 111. At his sentencing, the district court imposed supervised release conditions, which restricted Rodriguez's

---

[*] United States District Judge, Western District of Texas, sitting by designation.

freedoms of association and travel. Rodriguez appeals. We AFFIRM.

BACKGROUND

On April 9, 2007, Rodriguez, a United States citizen, entered the United States at the Paso Del Norte Port of Entry. A Customs and Border Patrol ("CBP") officer verified Rodriguez was "wanted and extraditable for aggravated assault and battery and interference with a peace officer and first degree sexual assault of a minor" by the Albany County Sheriff's Office in Wyoming. The CBP officer attempted to handcuff Rodriguez. He resisted the application of handcuffs and punched or struck three CBP officers before he was apprehended. Rodriguez was indicted on three counts of assaulting a federal officer, and subsequently pleaded guilty to all three counts of assault.

At sentencing, the district court relied upon the "circumstances of [Rodriguez], the circumstances of the case, and all of the information available," as well as the advisory Federal Sentencing Guidelines ("Sentencing Guidelines"), relevant statutory factors, and the Pre-Sentencing Report ("PSR") to sentence Rodriguez. The PSR, among other data, contained information about pending Wyoming charges for first degree, second degree, and third degree sexual assault of a fifteen-year-old girl.[1] Rodriguez was in a relationship with the girl's mother. The PSR stated the girl told her mother Rodriguez forced the teen to have sexual intercourse with him. According to the PSR, the mother confronted Rodriguez about the incident, who in reply stated, "I couldn't help myself." Rodriguez also had a prior conviction for aggravated assault on his then-pregnant wife. At the time, his wife declared she feared Rodriguez would take off with the children if

---

[1] The PSR stated the warrant in the assault charge was active, but a detainer had not been lodged.

she let him see them.

According to the PSR, the probation officer concluded Rodriguez's total offense level was fifteen, and Rodriguez's criminal history category was III. The correlative Sentencing Guidelines range was a twenty-four to thirty month term of imprisonment for each assault count. Rodriguez's only objection to the PSR was resolved prior to the sentencing hearing, and he concurred in the above Sentencing Guidelines calculation.

Based upon the information before it, the Sentencing Guidelines, and the relevant statutory authority, the district court imposed three concurrent thirty-month terms of imprisonment, a three-year term of supervised release, and supervised release conditions. The supervised release conditions include a prohibition on "associating with any child or children under the age of eighteen, except in the presence and supervision of an adult specifically designated in writing by the probation officer" ("association restriction"), and a prohibition on residing

> within 1000 feet of real property comprising a public or private elementary, vocational, or secondary school or public or private college, junior college, university or playground or a housing authority owned by a public housing authority or within 100 feet of a public or private youth center, public swimming pool or video arcade facility, without prior approval of the probation officer ("residence restriction").

The district court stated it would not order Rodriguez to register as a sex offender because Rodriguez had not been convicted of a sex offense.

At sentencing, Rodriguez objected to the association and residence restrictions. Rodriguez argued his convictions for assaulting federal officers did not constitute sex offenses. Rodriguez, however, did not assert the information

regarding the alleged sexual assault of a minor in the PSR was untrue, nor did he deny the pending charge. The district court overruled Rodriguez's objections.

On appeal, Rodriguez argues the district court abused its discretion by imposing the association and residence restrictions. Rodriguez contends these supervised release conditions are (1) not reasonably related to the sentencing factors of 18 U.S.C. § 3553(a) ("section 3553(a)") and (2) impose greater deprivations of liberty than are necessary to achieve the goals of section 3553(a).

## DISCUSSION

The district court may impose upon a defendant a term of supervised release as part of its sentencing decision. See 18 U.S.C. § 3583(a) ("section 3583").[2] This court reviews the portion of a sentencing decision related to an imposed imprisonment term based upon the Sentencing Guidelines under a deferential abuse of discretion standard. See United States v. Cisneros-Gutierrez, 517 F.3d 751, 764 (5th Cir. 2008) (citing Gall v. United States, — U.S.—, 128 S. Ct. 586, 594 (2007)). Pursuant to Gall, this court must ensure "the district court committed no significant procedural error." Id. (citing Gall, — U.S. at —, 128 S. Ct. at 597). If the imposition of the imprisonment term is "procedurally sound," this court "then considers the 'substantive

---

[2] Section 3583 states: "The [district] court, in imposing a sentence to a term of imprisonment . . . , may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a) (emphasis added). That supervised release is a part of the sentencing decision, rather than separate from it, comports with the supervised release statute, see id., and this court's case law, see, e.g., United States v. Woods, 547 F.3d 515, 516 (5th Cir. 2008) (stating "The court also sentenced Woods to concurrent supervised release terms of five years on Count I and three years each on Counts II and IV.") (emphasis added); United States v. Sealed Appellant, 123 F.3d 232, 235 (5th Cir. 1997) (vacating portions of district court's sentences imposing terms of supervised release because supervised release was unavailable to juvenile whose probation was revoked under the Federal Juvenile Delinquency Act) (emphasis added).

4

reasonableness of the sentence imposed under an abuse-of-discretion standard.'" Id. (citing Gall, — U.S. at —, 128 S. Ct. at 597).

By implication, the appropriate standard by which to review conditions of supervised release, which are part of the sentencing decision, is a deferential abuse-of-discretion standard, pursuant to Gall.[3]  The Record shows the district court considered the appropriate factors under sections 3553(a) and 3583.  Thus, the only issue that remains is whether the district court imposed conditions that are substantively unreasonable, and, therefore, abused its discretion.

## I.  Overview

Title 18 of the United States Code, section 3661 ("section 3661"), provides "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  As a general rule, a PSR bears sufficient indicia of reliability to be considered by a district court when making a factual determination.  See United States v. Rome, 207 F.3d 251, 254 (5th Cir. 2000).  When a district court relies on information in a PSR, "the defendant bears the burden of demonstrating that the information is unreliable or untrue."  Id.[4]

---

[3] This court notes its United States v. Ferguson, 369 F.3d 847, 854 (5th Cir. 2004) decision militates in favor of applying the axiomatic abuse-of-discretion standard; however, the Supreme Court's decision in Gall is clear: "courts of appeals must review all sentences . . . under a deferential abuse-of-discretion standard."  Gall, — U.S. at —, 128 S. Ct. at 591 (emphasis added).

[4] This is not to say a defendant should be required to "litigate" a pending sexual offense charge described in the PSR.  Rather, a defendant can simply attack the reliability and credibility of the information presented.  Thus, section 3661 permits the district court to take this information into consideration during a defendant's sentencing without forcing a defendant to waive any other rights.  See 18 U.S.C. § 3661.

A district court may impose any condition of supervised release "it considers to be appropriate." 18 U.S.C. § 3583(d). Supervised release conditions may include barring a defendant from "frequenting specified kinds of places or from associating unnecessarily with specified persons" or prohibiting the defendant from "resid[ing] in a specified place or area, or refrain[ing] from residing in a specified place or area." Id. §§ 3563(b)(6), (13), 3583(d) (stating a district court may impose "any condition set forth as a discretionary condition of probation in section 3563(b)"). Further conditions of supervised release, however, may only be imposed if certain requirements are met. Id. § 3583(d).

First, the condition must be "reasonably related" to (1) the nature and characteristics of the offense and the defendant; (2) the deterrence of criminal conduct; (3) the protection of the public from any further crimes of the defendant; and (4) the defendant's correctional needs. Id. §§ 3553(a)(1), (a)(2)(B)–(D), 3583(d)(1). Second, the condition cannot impose any "greater deprivation of liberty than is reasonably necessary" (1) to promote deterrence; (2) to protect the public from the defendant; and (3) to advance the defendant's correctional needs. See id. §§ 3553(a)(2)(B)–(D), 3583(d)(2). Finally, the condition must be consistent with the policy statements issued by the Sentencing Commission. Id. § 3583(d)(3). Accordingly, section 3583 defines the limits of the district court's discretion to impose supervised release conditions. Thus, when conditions relate to sentencing factors and are narrowly defined to achieve sentencing goals, and such conditions are reasonable, the district court does not abuse its discretion under Gall's deferential standard.

## II. Reasonable Relation

Rodriguez argues the supervised release conditions are "not reasonably

related to the nature and circumstances of the offense, or the history and characteristics of [] [him]" because he has never been convicted of a sexual offense. He contends the information in the PSR about the pending state charge for sexual assault of a minor was not sufficiently reliable to justify imposing the association and residence restrictions. He asserts the PSR contained an accusation, not a conviction, and whether the accusation had been presented to a grand jury or subject to cross-examination was not clear. Rodriguez also argues the district court did not make any evidentiary findings regarding the outstanding state charge.

Based on the information contained in the PSR, the United States of America ("Government") argues the supervised released conditions are reasonably related to the statutory factors because (1) Rodriguez was charged with sexual assault of a minor; (2) medical evidence confirmed the victim was assaulted; (3) Rodriguez admitted to the victim's mother he assaulted the victim; (4) Rodriguez demonstrated his consciousness of guilt when he attempted to flee from the CBP officers; and (5) Rodriguez admitted he had sexual impulse control issues around children because he told the victim's mother, "I can't help myself." The Government contends a defendant's supervised release conditions can relate to the defendant's history and characteristics, and not only to the underlying offense. Finally, the Government asserts a previous sex offense conviction "is simply not required to impose sex offender conditions."

Rodriguez characterizes the further conditions imposed by the district court as "sex offense" conditions. There is no binding case law from this court addressing whether a district court may impose supervised release conditions related to sex offenders, when the underlying conviction is not a sex offense, and the defendant has no sexual convictions. When the district court sentenced

Rodriguez, it made clear it took into consideration the "circumstances of [Rodriguez], the circumstances of the case, and all of the information available," as well as the advisory Federal Sentencing Guidelines, the factors that are required to be taken into consideration by statute, and the PSR. The PSR indicates Rodriguez was convicted of aggravated assault on his now-ex-wife, who was pregnant at the time of the assault. Such conduct, along with other incidents from his past mentioned in the PSR involving violence, as well as driving under the influence of alcohol, give all indication Rodriguez is a violent man who wantonly disregards the safety and welfare of the public and those with whom he is involved. Therefore, Rodriguez's construction of the further conditions as "sex offender" conditions simply because they have been applied as conditions of supervised release for sex offenders misses the mark.

Rodriguez did not dispute the reliability of the information contained in the PSR regarding his previous convictions, one of which involved violence to another, and other reckless behavior, or deny the sexual assault charge before the district court. He presented no proof to challenge the reliability of the PSR before the district court. While Rodriguez now contends the PSR is unreliable because it contained an accusation, rather than a conviction, without cross-examination or a grand jury hearing, he does not contest the truthfulness of the PSR.

Notably, Rodriguez does not deny he sexually assaulted the fifteen-year-old girl. He merely points out the procedural posture of the pending charge, and offers nothing more than conclusory assertions to rebut the reliability of the PSR. Thus, he has not met his burden of demonstrating the information in the PSR was unreliable or untrue, and therefore has not shown the district court erred in considering information in the PSR. See Rome, 207 F.3d at 254.

Accordingly, under Gall's deferential standard, the district court remained within the bounds of its discretion because it imposed conditions of supervised release, which are reasonably related to the sentencing factors of section 3553(a), in particular, Rodriguez's history and characteristics.

## III. Overbreadth

Rodriguez argues the supervised release conditions "involve significant deprivations of Rodriguez's freedom of association and travel." Rodriguez contends the association restriction limits his contact with his own minor children.[5] Rodriguez contends the residence condition is "so broad that it prohibits residing near places unlikely to be frequented by minors, such as colleges, universities, and vocational schools." Rodriguez argues the residence restriction is overly broad because it could prevent him from attending college or living in public housing.

The Government argues the supervised release conditions do not impose greater deprivations of liberty than are necessary because (1) Rodriguez is free to contact his own children, so long as he is supervised by another adult; (2) Rodriguez's argument regarding his children is "somewhat disingenuous given that he has no contact with his children and does not contribute to their support;" and (3) "given [Rodriguez's] sexual assault of a teenager and the presence of teenagers in his truck at the time of his arrest, the [district] court

---

[5] Rodriguez has two daughters, ages seven and eight. The daughters reside in Nebraska with Rodriguez's ex-wife, the same woman he assaulted while she was pregnant. Rodriguez stated at his sentencing, "I really need to stay out, so I can keep up with my child support for my children." Aside from this vague statement, which goes more to Rodriguez's desire to stay out of prison rather than his desire to visit his children, Rodriguez presented no evidence of how often he visits his children, nor how involved he is in their upbringing. According to the PSR, Rodriguez had made only one child support payment in five years and had no contact with his ex-wife or his children in the last five years.

reasonably prohibited the defendant from residing near educational facilities where teenagers indisputably congregate."

## A. Designation of Duties to the Probation Officer

As a preliminary matter, the district court's imposition of the residence restriction does not prohibit Rodriguez from attending a college or university. Rather, the residence restriction merely prevents him from residing within 1000 feet of such institutions "without prior approval of the probation officer." Similarly, the association restriction prohibits Rodriguez from interacting with children under the age of eighteen, except if an adult, who has been "specifically designated in writing by the probation officer," is present to supervise.

Probation officers have broad statutory authority to advise and supervise persons on supervised release to improve the releasees' conduct and lives, and to "perform any other duty that the court may designate." See 18 U.S.C. §§ 3601, 3603(3), (10).[6] In Rodriguez's case, the district court recognized the association and residence restrictions should be flexible, and accordingly designated to the probation officer the duties to advise and supervise Rodriguez with respect to these restrictions. Our sister Circuits have consistently upheld conditions of supervised release which require the prior approval of a probation officer, so long as the district court has not abdicated its judicial responsibility.

The Eighth Circuit concluded a supervised release condition which barred the defendant from accessing or possessing a home computer without prior approval of the probation officer was permissible because the prohibition was related to the defendant's history and because the ban on using a computer was

---

[6] Congress has provided "[a] probation officer shall . . . use all suitable methods . . . to aid . . . a person on supervised release . . . and to bring about improvements in his conduct and condition." 18 U.S.C. § 3603(3).

not absolute. United States v. Boston, 494 F.3d 660, 668 (8th Cir. 2007) (citing United States v. Ristine, 335 F.3d 692, 696 (8th Cir. 2003)). Similarly, where a district court proscribed a defendant from incurring credit charges without prior approval of the probation officer, the Ninth Circuit upheld the condition of supervised release because "[a]llowing the probation officer to monitor [the defendant's] finances [wa]s important to ensure that [the defendant complied with the restitution requirement of his sentence]." United States v. Jeremiah, 493 F.3d 1042, 1046 (9th Cir. 2007). The Ninth Circuit determined such a condition was "reasonably related to supervising his ability to make restitution payments." Id.

Where a district court imposed a condition of supervised release, which barred a defendant from accessing the Internet or other similar computer networks without prior approval from the U.S. Probation Office, the Third Circuit upheld the condition because it related to the defendant's prior conduct and the need to protect the public. United States v. Crandon, 173 F.3d 122, 128 (3d Cir. 1999). On the other hand, the Third Circuit concluded a district court's delegation to a probation officer of the duty to determine what material was "pornographic" to the extent necessary for the defendant's rehabilitation was an abdication of the district court's judicial responsibility. United States v. Loy, 237 F.3d 251, 266 (3d Cir. 2001) (citing United States v. Mohammad, 53 F.3d 1426, 1438 (7th Cir. 1995)). The Third Circuit determined

> [a] condition with no core meaning beyond 'whatever is necessary for [the defendant's] rehabilitation' cannot be cured by allowing the probation officer an unfettered power of interpretation, as this would create one of the very problems against which the vagueness doctrine is meant to protect, i.e., the delegation of 'basic policy matters to policemen . . . for resolution on an ad hoc and subjective

11

basis.'"

Id. (citing Grayned v. City of Rockford, 408 U.S. 104, 109, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972)). The Third Circuit concluded "without a more definitive standard to guide the probation officer's discretion, there [wa]s a real danger that the prohibition on pornography may ultimately translate to a prohibition on whatever the officer personally finds titillating." Id. (citation omitted).

The Ninth Circuit went the opposite direction of the Third Circuit and upheld the delegation to the probation officer of the duty to assess the appropriateness of "sexually stimulating or sexually oriented material" on the basis the condition would "promote [the defendant's] rehabilitation and to protect the public." United States v. Bee, 162 F.3d 1232, 1235 (9th Cir. 1998). Yet, the Ninth Circuit determined a district court's restriction of requiring a defendant who had been convicted of possessing child pornography to seek the prior approval of a probation officer to make software modifications was overly broad and unworkable because of the fast-paced nature of software upgrading, which could prevent the defendant from using any computer at work without continually contacting his probation officer. United States v. Goddard, 537 F.3d 1087, 1091 (9th Cir. 2008). The Ninth Circuit concluded the condition was unworkable and more restrictive than necessary. Id.

In the same case, however, the Ninth Circuit determined a supervised release condition requiring the defendant to obtain prior approval from the probation officer before using a post office box or receiving mail through a private carrier was permissible because the defendant was not restricted from receiving mail at a private residence or actually obtaining mail through a post office box with prior approval of his probation officer. Id. at 1092-93. The Ninth

Circuit concluded the condition was "reasonably related to the goals of his supervised release and impose[d] no greater a deprivation of liberty than [wa]s reasonably necessary to discourage him from obtaining child pornography." Id. at 1093.

In the case of an association restriction, the Third Circuit determined the district court's delegation of "absolute authority to the Probation Office to allow any such contacts while providing no guidance whatsoever for the exercise of that discretion" was untenable. United States v. Voelker, 489 F.3d 139, 154 (3d Cir. 2007). Because the defendant had been sentenced to a lifetime of supervised release, the Third Circuit concluded that designating the probation officer the sole authority for deciding if the defendant could ever have unsupervised contact with any minor, including his own children, was an impermissible "unbridled delegation of authority." Id. (citing Loy, 237 F. 3d at 266). The defendant's circumstances in Voelker, however, are distinguishable from Rodriguez's situation. Here, Rodriguez was only sentenced to three years of supervised release, while the defendant in Voelker was sentenced to a lifetime of supervised release.

Therefore, the association condition permitting the probation officer to designate an adult to supervise Rodriguez's contact with minors does not completely prohibit Rodriguez from contact with his children, or any children. Rodriguez may associate with children under the age of eighteen so long as he complies with the district court's caveats to the association restriction. Hence, the restriction is not absolute because Rodriguez may associate with minors, including his own children, after his probation officer designates in writing an adult who will supervise the contact. Cf. Goddard, 537 F.3d at 1091 (finding no

absolute bar as a result of condition because probation officer could consent to activity).

Similarly, the district court's residence restriction does not bar Rodriguez from living within 1000 feet of the enumerated institutions completely. Rodriguez is free to seek the advice of his probation officer. In accordance with the probation officer's statutory duties to assist Rodriguez in improving his conduct and condition, the probation officer may permit Rodriguez to reside near these institutions, in keeping with the district court's considerations in sentencing Rodriguez, including protecting the public from Rodriguez. See 18 U.S.C. §§ 3583, 3603. The district court's delegation of these duties to Rodriguez's probation officer in accordance with the statutory and Sentencing Guidelines, rather than with unfettered power of interpretation, see Loy, 237 F.3d at 266 (citing Grayned, 408 U.S. at 109, 33 L. Ed. 2d 222, 92 S. Ct. 2294), limits the breadth of the restriction, removes any arbitrariness from the district court's sentencing decision, and imposes no "greater deprivation of liberty than is reasonably necessary."

## B. Association Restriction

In disputing the association restriction, Rodriguez directs this court's attention to the Eighth Circuit's opinion in United States v. Davis, 452 F.3d 991, 995 (8th Cir. 2006). Based upon Davis, Rodriguez argues "there is no evidence that [he] ever endangered his two children or that he would do so while on supervised release" to merit the association restriction. In Davis, the Eighth Circuit determined the district court plainly erred in precluding the defendant from having any unsupervised contact "with persons/females/males under the age of 18," including his own daughter, as a condition of supervised release. 452

14

F.3d at 994. The defendant argued "the condition interfer[ed] with his parental rights to a greater degree than [wa]s reasonably necessary." Id. at 995 (emphasis added).

In Davis, the defendant was convicted of possessing child pornography. Id. at 993. The Eighth Circuit noted, however, "[t]here [wa]s no evidence in the record that Mr. Davis [] ever sexually abused a child or that he would try to abuse his daughter once released from prison." Id. at 995. In the absence of such evidence, the Eighth Circuit found the challenged condition "would interfere with Mr. Davis's constitutional liberty interest in raising his own child." Id. Therefore, the Eighth Circuit concluded "a condition of supervised release that limit[ed] Mr. Davis's access to his daughter [wa]s not reasonably necessary either to protect Mr. Davis's daughter or to further his rehabilitation." Id. The Eighth Circuit recognized it upheld similar restrictions in other cases, but it did so because "there were additional facts that justified the condition."[7] Id.

The instant case is distinguishable from Davis because there is unrebutted evidence in the PSR that Rodriguez sexually assaulted a minor. Here, "there [a]re additional facts that justif[y] the condition." See id. Rodriguez violated a close familial relationship by sexually assaulting his girlfriend's daughter. Not only did the evidence in the PSR support this, but Rodriguez also did not deny the charge. The Eighth Circuit has similarly upheld an association restriction

---

[7] The Eighth Circuit upheld similar supervised release conditions, United States v. Crume, 422 F.3d 728 (8th Cir. 2005), because the defendant's daughter was conceived as the result of defendant impregnating a minor. See also United States v. Heidebur, 417 F.3d 1002 (8th Cir. 2005) (upholding supervised release conditions because the defendant had taken sexually explicit pictures of his step-daughter).

where the defendant violated a close familial relationship by photographing his step-daughter in a sexually explicit manner. See Heidebur, 417 F.3d at 1005-06.

Congress has made clear that children, including Rodriguez's, are members of the public it seeks to protect by permitting a district court to impose appropriate conditions on terms of supervised release. See 18 U.S.C. §§ 3583(d)(2), 3553(a)(2)(C). Rodriguez has at least one conviction involving violence against a pregnant woman. He is a repeat offender of driving under the influence of alcohol. Furthermore, unlike the defendant in Davis, here the PSR, the truthfulness of which Rodriguez has never disputed, shows Rodriguez has actually harmed a child. In addition, the PSR indicates that Rodriguez's ex-wife feared Rodriguez's visitation with the children because he might take off with them.

Any liberty interest Rodriguez has in freely associating with minors and raising his own children is outweighed by the need to protect them. Therefore, restricting Rodriguez from having contact with children, including his own, except under the supervision of another adult designated in writing by the probation officer, is not overly broad because the restriction provides no "greater deprivation of liberty than is necessary" to protect his children and other minors. Other courts have found similar conditions of supervised release to be permissible. See United States v. Levering, 441 F.3d 566, 568-69 (8th Cir. 2006) (upholding special condition of supervised release prohibiting all contact with female children under age 18, including the defendant's children, unless approved by the probation officer); United States v. Smith, 436 F.3d 307 (1st Cir. 2006) (upholding supervised release condition requiring defendant to stay away from his minor daughter unless and until the probate court ordered otherwise).

Therefore, pursuant to Gall's deferential abuse-of-discretion standard, the district court did not err in imposing the association condition.

## C. Residence Restriction

The residence restriction, though encompassing, is not overly broad, either.[8] Congress has mandated such a restriction is permissible if it imposes "no greater deprivation of liberty than is necessary" to protect the public. See 18 U.S.C. §§ 3583(d), 3563(b)(13). Here, the district court tailored the residence restriction by permitting Rodriguez to live within a 1000 or 100 feet of such areas with the prior approval of his probation officer. Therefore, the restriction is not absolute, and Rodriguez may live in such areas if improvements in his conduct and condition might occur as a result of living in such areas. See id. § 3603(3). Likewise, the residence restriction is not overly broad because it prevents Rodriguez from having contact with minors in places where minors are present and potentially vulnerable. Though not well-developed in the Record, it is well-established that minors can be found at these various institutions.[9]

---

[8] Rodriguez does not contend the residence restrictions imposed by the district court inhibited his ability to live with a family member, who may live within 1000 or 100 feet of these locations, thereby, potentially impeding his rehabilitation or interfering with his intimate associations. See Woods, 547 F.3d at 516. Therefore, the court will not address such a contention.

[9] This court's cursory literature research revealed studies by the National Center for Education Statistics, explaining "dual enrollment" (also known as "dual credit"), a program whereby high school students can participate in college-level courses and earn college credits, is "an area in which interest has grown rapidly over the past decade." BRIAN KLEINER & LAURIE LEWIS, DUAL ENROLLMENT OF HIGH SCHOOL STUDENTS AT POSTSECONDARY INSTITUTIONS: 2002–03, 1, (NCES 2005–008), U.S. Dep't of Educ., Nat'l Ctr for Educ. Statistics (2005) ("DUAL ENROLLMENT"); TIFFANY WAITS, J. CARL SETZER, & LAURIE LEWIS, DUAL CREDIT AND EXAM-BASED COURSES IN U.S. PUBLIC HIGH SCHOOLS: 2002–03, 1, (NCES 2005–009), U.S. Dep't of Educ., Nat'l Ctr for Educ. Statistics (2005) ("DUAL CREDIT"). "[C]ourses for dual enrollment c[an] be taught on a college campus, on a high school campus, or at some other location." DUAL ENROLLMENT at 2. Among the

Restricting Rodriguez's access to these areas is a measure which serves to protect the public and deters Rodriguez from criminal conduct. See 18 U.S.C. § 3583(d)(3). Based upon the information in the PSR, the district court reasonably concluded the residence restriction would prevent harm to the numerous individuals who attend such institutions. The condition does not impose a "greater deprivation of liberty than is necessary" to protect the public who attends such institutions. See id. The district court, therefore, remained within the bounds of its discretion when it imposed the residence restriction.

## CONCLUSION

For the reasons stated, the judgment of the district court is AFFIRMED.

---

institutions with "dual enrollment" programs, eighty percent of them offered courses to high school students on college campuses, and twelve percent of them offered courses at other locations. Id. at 9.

During the 2002-2003, twelve-month academic school year, seventy-one percent of public high schools offered "dual credit" courses. DUAL CREDIT at 4. Approximately 813,000 high school students took college-level courses through post-secondary institutions during the 2002-2003, twelve-month academic school year, which represents about five percent of all high school students. DUAL ENROLLMENT at 7. These statistics demonstrate high school students are indeed present at these institutions. See id. at 2, 7.