# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 12, 2013

Lyle W. Cayce
Clerk

No. 12-50238

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

KEENAN MILLER,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:10-CR-498

Before JONES and CLEMENT, Circuit Judges, and KAZEN[*], District Judge.

PER CURIAM:[**]

Keenan Miller ("Miller") pled guilty to escape from federal custody, in violation of 18 U.S.C. § 751(a). The district court sentenced Miller to 60 months of imprisonment and three years of supervised release. Miller appeals aspects of the special conditions of supervised release. We AFFIRM.

---

[*] District Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50238

## I.

In 2005, Miller sent threatening emails to a female student and followed her to New Jersey. He was sentenced to 30 months in prison and three years of supervised release. Miller's term of supervised release was revoked in 2009 because he failed to participate in his mental heath treatment program. He was sentenced to serve 24 months of imprisonment and an additional 12 month term of supervised release.

While in custody, Miller wrote letters to his probation officer, R.M., and others accusing R.M. of lying during the revocation hearing and expressing anger about his sentence. Some letters referenced serial killers and his New Jersey victim. In 2010, Miller went to prerelease custody in a halfway house. There, Miller told an employee that he was going to "make [R.M.] pay," alluded to suicide killings similar to the Columbine massacre, indicated that he would not have difficulty obtaining a firearm, and stated that he knew where the New Jersey victim lived and that it would be easy for him to kill her. Miller subsequently left the halfway house without permission, returned two days later, advised that he no longer wished to hurt anyone, but quickly escaped again. Law enforcement officers subsequently found and arrested him.

Miller was charged with one count of escape from custody (Count 1), one count of threatening to assault and murder R.M., and one count of threatening to cause bodily injury with intent to retaliate against R.M. He pled guilty to Count 1, with the parties jointly recommending that he be sentenced to 60 months of imprisonment and three years of supervised release.

The district court accepted the parties' recommendation and imposed several conditions of supervised release, including, over Miller's objections, that he participate in a computer restriction and monitoring program ("CRMP") and

No. 12-50238

submit to GPS tracking. Miller timely appealed the imposition of those two special conditions.[1]

## II.

We review the imposition of discretionary conditions of supervised release under "a deferential abuse-of-discretion standard." *United States v. Rodriguez*, 558 F.3d 408, 412 & n.3 (5th Cir. 2009). A district court may impose any condition of supervised release "it considers to be appropriate" so long as certain requirements are met. 18 U.S.C. § 3583(d). First, the condition "must be reasonably related" to the following factors set forth in 18 U.S.C. § 3553(a):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need to afford adequate deterrence to criminal conduct, (3) the need to protect the public from further crimes of the defendant, and (4) the need to provide the defendant with needed [training], medical care, or other correctional treatment in the most effective manner.

*United States v. Paul*, 274 F.3d 155, 164–65 (5th Cir. 2001) (internal quotation marks and citation omitted). "A condition of supervised release must be related to any of these factors, not necessarily all of them." *United States v. Miller*, 665 F.3d 114, 126 (5th Cir. 2011) (internal quotation marks and citation omitted). Second, the condition cannot impose any "greater deprivation of liberty than is reasonably necessary" to promote deterrence, protect the public from the defendant, and advance the defendant's correctional needs. *Paul*, 274 F.3d at 165; *see* §§ 3583(d)(2), 3553(a)(2)(B), (a)(2)(C), (a)(2)(D). Finally, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3).

---

[1] Miller initially appealed the special condition that he submit to searches of his person, residence, and property by a probation officer. After the district court modified this condition in September 2012, however, Miller advised that his appeal is now limited to the computer monitoring and GPS conditions.

No. 12-50238

## III.

Miller first challenges the special condition of supervised release that requires him to "participate in the computer restriction/monitoring program [CRMP]" and "abide by all the rules and requirements of the program." This condition reasonably relates to Miller's prior conviction for sending threatening emails[2] and the need to deter Miller from threatening others.[3] Miller asserts that because the CRMP condition does not specify the precise nature of the restrictions, it could impose "wholesale restriction[s]" on his liberty interests. The broad language in the CRMP condition is not fatal to its validity, however, because "sentencing courts must inevitably use categorical terms to frame the contours of supervised release conditions." *United States v. Phipps*, 319 F.3d 177, 193 (5th Cir. 2003); *see also Paul*, 274 F.3d at 167 (noting that vagueness is not always fatal to the validity of a special condition). Moreover, Miller "can request a more definite or precise condition" once he is released from custody. *Phipps*, 319 F.3d at 193–94 (citing 18 U.S.C. § 3583(e)(2)). The district court could have reasonably concluded that the CRMP condition was necessary to protect the public. There was no abuse of discretion.

Miller also challenges the special condition requiring him to "be subjected to active Global Positioning System (GPS) monitoring for the duration of his supervised release." He does not contend that this condition is unrelated to his escape from custody conviction. Miller asserts that the GPS monitoring

---

[2] Contrary to Miller's assertions, it is irrelevant that he *could have* used a non-electronic way to convey his threats.

[3] It is also irrelevant that this condition was adopted from the Western District of Texas Sex Offender Operation Procedures ("SOOP"). *See United States v. Prochner*, 417 F.3d 54, 63–64 (1st Cir. 2005) (noting that a special condition related to sex offender treatment is not necessarily invalid when the defendant's criminal history does not involve sex offenses); *cf. United States v. Emerson*, 231 F. App'x 349, 353–55 (5th Cir. 2007) (unpublished) (affirming a modification of supervised release conditions to impose sex-offender-related special conditions when the underlying conviction was for possession of a firearm).

constitutes a greater deprivation of his liberty interest than is reasonably necessary because he never acted out his threats of violence. This fact insufficiently minimizes his risk of recidivism and danger to the public. Miller has a history of stalking, escape, angry outbursts, and erratic behavior. At the conclusion of sentencing, Miller even stated that he had "discussed with [his] family that [he] might have to be a fugitive again." In light of Miller's background, any impairments of Miller's privacy due to the GPS monitoring are outweighed by the condition's benefits. These include effective verification of compliance with the other conditions of supervised release, deterrence of future crimes, and protection of the public. Accordingly, the district court did not abuse its discretion by imposing the GPS monitoring condition.

Miller's sentence is **AFFIRMED**.