# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-40568

United States Court of Appeals
Fifth Circuit

**FILED**

November 20, 2019

Lyle W. Cayce
Clerk

MANUEL SOTO,

Plaintiff - Appellee

v.

NELDA BROCK, Probation Officer, sued in her individual capacity,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:17-CV-145

Before OWEN, Chief Judge, and HAYNES and COSTA, Circuit Judges.

PER CURIAM:*

Nelda Brock appeals the district court's denial of summary judgment based on qualified immunity. For the reasons set forth below, we AFFIRM.

## I. Background

Manuel Soto was convicted of aggravated sexual assault of a child, and he is currently an inmate in the custody of the Texas Department of Criminal Justice ("TDCJ"). Soto's son, A.M.S., was a minor in the state's custody at the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-40568

Amador R. Rodriguez Boot Camp, a post-adjudication correctional facility. Juveniles at the boot camp, referred to as "cadets," are permitted to communicate only with parents or legal guardians listed on a Cadet Contact Authorization form. In May 2015, A.M.S.'s mother signed a Cadet Contact Authorization form, but the form did not include Soto's name.[1]

In June 2015, Soto's mother contacted Nelda Brock—a probation officer at the boot camp—to ascertain if Soto would be permitted to write a letter to A.M.S. Brock said Soto was not permitted to contact A.M.S. because of Soto's status as an inmate and because of the nature of his crime. Additionally, when Soto's mother asked to speak to Brock's supervisor, Brock informed Soto's mother that Brock was the person responsible for making decisions about who could send letters to A.M.S. In July, TDCJ gave Soto permission to write to A.M.S. Then, in August, Soto sent a letter to Brock and demanded that he be allowed to correspond with A.M.S.

On September 3, 2015, Soto mailed a letter to A.M.S., which the boot camp received on September 5, 2015. A.M.S. did not receive the letter. On September 8, 2015, A.M.S.'s mother wrote a letter to the boot camp. She requested that Soto not be permitted to contact A.M.S., and she asserted that such contact was not allowed "per . . . Nelda Brock." The boot camp then returned Soto's letter to him and included their mail policy and A.M.S.'s Cadet Contact Authorization form with the letter. Soto alleged that he received no written explanation for the rejection of his letter and that the boot camp had no process in place to appeal the rejection.

Soto filed suit against Brock and Cameron County, alleging, inter alia, that Brock's actions violated Soto's due process rights because the boot camp had no procedural safeguards built in to its mail policy and did not provide

---

[1] The form listed A.M.S.'s mother and A.M.S.'s brother.

Soto with a way to appeal its decision.  The district court dismissed all of Soto's claims except for his procedural due process claim and denied Brock's assertion of qualified immunity as to that claim.

Brock filed an interlocutory appeal from the order of the district court denying her motion for summary judgment based on qualified immunity. Brock argues that she did not violate Soto's procedural due process rights when she returned his letter, but that if she did, such rights were not clearly established, and her actions were objectively reasonable.

## II.  Legal Standard

The denial of a motion for summary judgment based on qualified immunity is a "collateral order capable of immediate review."  *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc).  Our jurisdiction to review the denial is "significantly limited," extending to questions of law only.  *Id.*  We review the district court's resolution of these solely legal issues de novo.  *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 409 (5th Cir. 2009).

"Government officials performing discretionary functions are entitled to qualified immunity from civil liability to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The test for qualified immunity is twofold: "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in light of the clearly established law at the time of the incident."  *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001) (quoting *Hare v. City of Corinth*, 135 F.3d 320 (5th Cir. 1998) (en banc)).

When a defendant asserts qualified immunity, the usual summary judgment burden of proof shifts to the plaintiff, who must establish a genuine

fact dispute "as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Though the plaintiff has the burden of negating qualified immunity, the court must draw all inferences in his favor. *Id.* In an interlocutory appeal from the denial of qualified immunity, jurisdiction extends only to "the purely legal question whether a given course of conduct would be objectively unreasonable in light of clearly established law," not to whether the fact dispute is genuine. *Kinney*, 367 F.3d at 347.

## III.  Discussion

### A.    Whether Constitutional Rights Were Violated

This appeal hinges on whether qualified immunity shields Brock from Soto's procedural due process claim. First, we must determine whether Brock's actions violated Soto's due process rights. "The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). Therefore, when a letter has been rejected, both senders and addressees are entitled to procedural due process protections, including notice and an opportunity to be heard. *See Martinez*, 416 U.S. at 417–19. The Supreme Court has approved of procedural due process safeguards requiring that "an inmate be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved the correspondence." *Id.* at 418–19; *see also Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012)

No. 18-40568

(stating that senders and addressees of personal letters that are censored by a prison are entitled to notice and the opportunity to be heard).

Moreover, this is not a situation in which the recipient is prohibited from receiving mail. We have explained that minors in boot camps are "not free to leave" and thus are afforded constitutional protections applicable to prisoners. *Austin v. Johnson*, 328 F.3d 204, 208–09 (5th Cir. 2003). Brock acknowledged that the boot camp was a "post-adjudication secure correctional facility," which Texas law defines as "[a] secure facility administered by a governing board that includes construction and fixtures designed to physically restrict the movements and activities of the residents . . . ." 37 TEX. ADMIN. CODE § 343.100(48).

Here, A.M.S. was detained in a correctional facility, which triggered a liberty interest in A.M.S.'s mail subject to due process protections. *See Martinez*, 416 U.S. at 418. Soto alleges that his letter to A.M.S. was rejected under Brock's direction without clear notice as to why it was rejected. Soto was not given an opportunity to respond or appeal Brock's determination to another official at the boot camp. Accordingly, Soto did not receive the requisite due process.

That Soto is incarcerated for a sexual offense is undisputed and a matter of public record. However, in the cases cited by Brock intimating that a sex offender's right to access children can be restricted, the offenders were subject to sex offender registration laws and their rights were adjudicated in the original criminal proceeding. *See Duarte v. City of Lewisville*, 858 F.3d 348, 352–53 (5th Cir. 2017); *United States v. Rodriguez*, 558 F.3d 408, 417–18 (5th Cir. 2009) (upholding a court-imposed condition restricting the offender from unsupervised access to children). There is no evidence showing that sex offender registration laws or the criminal court prevented Soto from contacting his son based on his status as a sex offender. Accordingly, Brock has failed to

5

demonstrate that the district court erred by holding that Soto had a due process interest in communicating with his detained son.

Brock also argues that the State did not interfere with Soto's right to due process because A.M.S.'s mother signed a form that did not authorize Soto to contact his son, and Brock was simply following policy. However, the district court found fact disputes in the summary judgment evidence based upon Soto's mother's statements in her affidavit that supported the claim that Brock had interfered with Soto's rights. Specifically, among other things, Soto's mother averred that Brock stated that she was responsible for making decisions about who could send mail. This undercuts Brock's contention that she was simply following the boot camp's policy and supports a conclusion that Brock had discretion as to whether Soto could contact his son. At this stage in the litigation, we cannot review the district court's conclusion that genuine factual disputes exist. *See Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007).

In sum, analyzing the facts favorable to Soto supports his contention that he did not receive the procedural protections that due process requires. Additionally, Brock has failed to show that Soto's status as a sex offender or the existence of A.M.S.'s Cadet Contact Authorization form should alter the due process interest that Soto had in writing his son.

## B.    Whether the Rights Were Clearly Established

Having determined that, construing facts favorably to Soto, the evidence supports finding that his rights were clearly violated, we next consider whether his rights were clearly established for qualified immunity purposes. "A right is clearly established when 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (quoting *Jones v. Lowndes Cty.*, 678 F.3d 344, 351 (5th Cir. 2012)). For a right to be clearly established, its contours must be "sufficiently definite that any reasonable official in the defendant's shoes would

have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).  Courts must not "define clearly established law at a high level of generality," as "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).  It is not required that the "very action in question has previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Instead, "in the light of pre-existing law the unlawfulness must be apparent." *Id.*

In this case, the specific right at issue was clearly established.  At the time of the alleged violation, the law made clear that (1) due process safeguards—specifically, notice of why the letter was rejected and an opportunity to appeal the decision—are required when a prisoner's letter is rejected, and (2) the fact that Soto's son was a minor does not change the analysis.  *See Martinez*, 416 U.S. at 417–19; *Prison Legal News*, 683 F.3d at 224; *Austin*, 328 F.3d at 208–09.  Thus, a reasonable official would have understood that failing to provide adequate notice and an opportunity to appeal after rejecting a letter sent to a minor detained in a boot camp would violate the sender's constitutional rights.

Finally, Brock contends that she acted reasonably by preventing Soto's contact with A.M.S. because Soto was not authorized to contact A.M.S. pursuant to the Cadet Contact Authorization form that A.M.S.'s mother signed.  Again, Brock's authority to allow contact is in dispute, since there is evidence she claimed to have the power to make that decision.  But even if Brock was constrained by policy and therefore acted reasonably by initially withholding Soto's letter, she was required to afford Soto procedural due process.  *See Johnson v. El Paso Cty. Sheriff's Dep't*, No. 92-8514, 1995 WL 152720, at \*5 (5th Cir. Mar. 20, 1995) (noting that the rejection of correspondence and notification of the rejection are separate constitutional

inquiries).    That is, even if it was objectively reasonable for Brock to reject Soto's correspondence based on the contents of A.M.S.'s Cadet Contact Authorization form, it is clearly established that due process required Brock to provide Soto with notice of the decision and an opportunity to respond.

## IV.  Conclusion

Based on the foregoing, the judgment of the district court is AFFIRMED, and the case is REMANDED for further proceedings.