**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 16, 2013

No. 12-20043

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

DAVID HIEN VINH TANG,

Defendant – Appellant

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CR-776-1

Before JOLLY, GARZA, and OWEN, Circuit Judges.

PER CURIAM:[*]

David Hien Vinh Tang pleaded guilty to failing to register as a sex offender after traveling in interstate commerce in violation of 18 U.S.C. § 2250(a). He appeals three conditions of his supervised release. First, he appeals a ban on Internet use without permission of his probation officer. Second, he appeals certain aspects of a requirement that he participate in mental health or sex offender treatment. Third, he appeals a restriction on

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20043

contact with minors, including children of his own, part of which is a ban on dating people with minor children. We AFFIRM in part and VACATE in part.

## I

In 2003, Tang was convicted under Iowa law of assault with intent to commit sexual abuse, not causing bodily injury. IOWA CODE § 709.11. Tang, drunk at the time of the offense, touched a thirteen year old girl's breast and kissed her in an automobile. The offense occurred after the untimely death of Tang's seven year old daughter, who fought leukemia for four years. Tang turned himself in for the offense, and, for the next eight years, compliantly registered as a sex offender. The 2003 Iowa offense is his only criminal conviction.

In 2011, Tang moved to Texas to pursue new work opportunities and a romantic relationship. Before leaving Iowa, Tang notified his probation officer, and, upon arriving in Texas, Tang went to the Houston Police Department ("HPD") to register and was told to return for a sex offender registration information session. Tang returned and attended the information session, but was asked to return again because HPD did not yet have Tang's requisite documentation from Iowa. As instructed, Tang went to the HPD a third time to register, but he was turned away because HPD still did not have all the requisite materials to complete his registration. Although Tang was asked to return to HPD for a fourth visit scheduled for June 1, 2011 to finish the process, he did not. Nor did he register as a sex offender with the Harris County Sheriff's Office. Thus, he failed to comply with federal law, which required him to register. 18 U.S.C. § 2250(a).

No. 12-20043

After determining that Tang was required to register as a sex offender in Texas and that he had failed to do so, the Texas Department of Public Safety notified the United States Marshal Service. The Marshal Service tried to find Tang at the address he had provided during each of his visits to HPD but was unable to do so because the address was at a residential location that Tang did not own and at which Tang did not reside. The owner informed the Marshal Service that he had given permission to Tang's girlfriend to use the address to register for a cell phone.[1] Eventually, the Marshal Service was able to locate Tang at another address in Cypress, Texas. Tang was arrested and charged with a one count indictment of failing to register as a sex offender after traveling in interstate commerce, in violation of 18 U.S.C. § 2250(a).

At sentencing, Tang waived the United States Probation Office's preparation of a presentence investigative report ("PSR") and pled guilty. In the oral pronouncement of sentence, the district court imposed a "[split] sentence at the low end of the eligible guideline range" consisting of three months of imprisonment, three months of community supervision, and five years of supervised release. Three conditions of Tang's supervised release are at issue in this appeal: (1) a ban on computer and Internet use, (2) sex offender-related mental health treatment (including potential physiological testing and a potential waiver of confidentiality), and (3) a restriction on contact with minors and persons whom Tang may date.

At sentencing, the court stated the following regarding the Internet ban:

---

[1]Though internally contradictory on the issue, the sentencing transcript seems to indicate that Tang lived at the address for a short time, but then moved in with his girlfriend's family because the owner's family members moved into that residence.

3

No. 12-20043

> The defendant shall not subscribe to any computer online service or access any internet service during the length of his supervision unless approved in advance by the probation officer.

> The defendant may not possess internet cable software on any hard drive, disk, floppy disk, DVD, diskette, or any other electronic storage media unless approved in advance by the probation officer.

Tang's lawyer objected to this condition by saying, "I just wanted to add one more objection, which is to the restriction of no online service or cable software so that he could use the Internet." Twice, Tang's lawyer stated that her understanding that the ban would prevent Tang from accessing the Internet in his home was the root of her objection.

Regarding the treatment program, the court explained:

> The defendant shall participate in a mental health program—treatment program and/or sex offender treatment program provided by the registered sex offender treatment provider, as approved by the United States Probation Office, which may include but not be limited to group and/or individual counseling sessions and or polygraph testing or medical-physiological testing to assist in treatment and case monitoring administered by the sex offender contractor or their designee.

> The defendant shall participate as instructed and shall abide by all policies and procedures of the sex offender program until such time as the defendant is released from the program as approved by the United States probation officer.

> The defendant will incur any costs associated with such sex offender treatment program and testing based on ability to pay as determined by the probation officer.

> The defendant shall waive his or her right to confidentiality in any records for mental health treatment imposed as a consequence of his judgment, allowing the supervising United States probation officer to review the defendant's course of

treatment and progress with the treatment provide—and progress with the treatment provider.

Tang's lawyer objected, saying the potential physiological testing "seems greater than necessary to achieve the goals of 3553"[2] and that "even group [] counseling—and that he waived confidentiality for any counseling that he receives appears greater than necessary to achieve the goals." Later, counsel repeated that she "vehemently emphasized [her] objection to physiological mental health treatment, whatever that might entail" as being "vague and overbroad" and not related to his underlying offense of failing to register.

Regarding the restriction on contact with minors, the court stated:

> The defendant shall not have any contact with any minor children under the age of 18 without prior written permission of the probation officer.

> The defendant shall not cohabitate with anyone who has children under the age of 18 unless approved in advance by the probation officer.

The probation officer present clarified that the restriction does apply to one's own children. As she did with the two conditions discussed above, Tang's counsel objected to the restriction, saying, "I . . . object to the no contact with a child under 18 without permission and no cohabitation."

The court overruled all of Tang's objections; therefore, the Internet ban, mental health and sex offender treatment, and restriction on contact with minors all applied as conditions of Tang's supervised release. In the section restricting contact with minors, the written judgment changed "shall not

---

[2]"3553" refers to 18 U.S.C. § 3553, explained in greater detail below.

cohabitate with" to "shall not date or cohabitate with." Tang timely appealed these conditions, including the change in the written judgment.

## II

We "first ensure that the district court committed no significant procedural error, such as . . . failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). If there is no procedural error, we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard . . . tak[ing] into account the totality of the circumstances." *Id.* "To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009). We review the imposition of conditions of supervised release for abuse of discretion. *United States v. Paul*, 274 F.3d 155, 165 (5th Cir. 2001). However, "[w]hen a defendant objects to his sentence on grounds different from those raised on appeal, we review the new arguments raised on appeal for plain error only." *United States v. Mendina-Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003).

## III

Although a district court generally has extensive discretion in imposing conditions of supervised release, its discretion is limited by 18 U.S.C. § 3583(d), which provides that the district court may impose conditions of supervised release that are reasonably related to the factors in 18 U.S.C. § 3553(a). 18 U.S.C. § 3583(d)(1). Section 3553(a) states in relevant part that the district court shall consider, *inter alia*, the following four factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need . . . to afford adequate deterrence to criminal conduct;"

No. 12-20043

(3) "the need . . .to protect the public from further crime of the defendant;" and (4) "the need . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(1), (2)(B)–(D); *see Paul*, 274 F.3d at 164–65. Section 3583(d) requires a reasonable relationship with only one of the four factors, not necessarily all of them. *United States v. Weatherton*, 567 F.3d 149, 153 (5th Cir. 2009) (explaining a condition of release "must be reasonably related to one of four factors").  In addition to being related to at least one of the four factors, a condition of supervised release cannot involve a "greater deprivation of liberty than is reasonably necessary for the purposes set forth in" § 3553.  18 U.S.C. § 3583(d)(2). The Supreme Court has recognized that "[t]he congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty." *Johnson v. United States*, 529 U.S. 694, 708–09 (2000).

## A

Tang asserts the district court erred procedurally by not adequately explaining the reasons for the Internet ban and restriction on contact with minors. 18 U.S.C. § 3553(c) requires the district court to "state in open court the reasons for its imposition of the particular sentence," and Tang asserts no such reasons were given for these two conditions.  We review for plain error because Tang did not object on this ground at sentencing. *Neal*, 578 F.3d at 272.  Thus, we may not provide relief unless there was "(1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005) (internal quotation marks omitted).  "Even when these elements are met, we have discretion to correct the forfeited error only if it 'seriously affects

the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009) (quoting *Mares*, 402 F.3d at 520).

Even assuming the district court plainly erred, any error did not affect Tang's substantial rights. We acknowledge the Sixth Circuit recently held a district court's plain error in failing to state the reasons for its imposition of supervised release conditions affected the defendant's substantial rights because "the district court might not have imposed the special conditions of supervised release if it had explained the basis for these conditions." *United States v. Doyle*, 711 F.3d 729, 736 (6th Cir. 2013). There, the court stated "a district court's error affects a defendant's substantial rights where the error affected the outcome of the district court proceedings, insofar as the error *may* have had a substantial influence on the outcome of the proceedings." *Id*. at 735.

In our circuit, however, "[t]o show that an error affects a defendant's substantial rights, the defendant must show that it affected the outcome in the district court" by "demonstrat[ing] a probability sufficient to undermine confidence in the outcome." *Mondragon-Santiago*, 564 F.3d at 364 (internal quotation marks omitted). Though *Mondragon-Santiago* recognized that other circuits have relaxed this requirement in the sentencing context, it held "to show substantial prejudice, the defendant must *prove* that the error affected the sentencing outcome." *Id*. at 365 (emphasis added). *Mondragon-Santiago* noted that "so far as within-Guidelines sentences are concerned," our circuit precedents reject the "argu[ment] that the district court's error affect[s] . . . substantial rights because it makes meaningful appellate review impossible." *Id*. There, the district court plainly erred by not adequately stating its reasons

No. 12-20043

for the sentence, but the error did not affect the defendant's substantial rights because "he fail[ed] to show that an explanation would have changed his sentence." *Id*. The same result is required here because Tang does not explain how compliance with § 3553(c) would have changed his sentence. Therefore, we hold the district court did not reversibly err on procedural grounds.

### B

Tang asserts the ban on Internet without approval from a probation officer is contrary to U.S. Sentencing Guidelines Manual § 5D1.3(d)(7) and the § 3553(a) factors. Our review is for abuse of discretion because Tang objected to this condition at sentencing. *Paul*, 274 F.3d at 165. Section 5D1.3(d)(7) recommends, as a special condition of release for an individual convicted of a "sex offense,"[3] a limitation on the "use of a computer or an interactive computer service *in cases in which the defendant used such items*." U.S. SENTENCING GUIDELINES MANUAL § 5D1.3(d)(7)(B) (2012) (emphasis added). The instant offense for which Tang was sentenced is his failure to register. His prior offense, assault with intent to commit sexual abuse, not causing bodily injury, did not involve a computer or the Internet. There is no evidence that Tang has ever used the Internet to commit an offense of any sort. Thus, Tang asserts this condition cannot be based on § 5D1.3(d)(7). Tang further asserts the Internet ban does not satisfy the § 3553 factors. In particular, he claims the Internet ban is not "reasonably related" to the nature of the offense (here, the failure to register) and involves a greater deprivation of liberty than reasonably necessary given the circumstances. *See* 18 U.S.C. § 3583(d)(1)–(2).

---

[3]Tang's failure to register qualifies as a sex offense. *See* U.S. SENTENCING GUIDELINES MANUAL § 5D1.2 cmt. n.1.

No. 12-20043

We agree.  The Internet ban is not "reasonably related to the factors set forth in" § 3553(a) and involves a greater deprivation of liberty than reasonably necessary.  18 U.S.C. § 3583(d)(1)–(2).  The ban does not relate to the "nature and circumstances" of Tang's offense: here, the failure to register as a sex offender.  18 U.S.C. § 3553(a)(1); *see Unites States v. Miller*, 665 F.3d 114, 130 (5th Cir. 2011) ("The decisions of our court have tended to permit sentencing courts to give more weight to the goals of protecting the public and preventing recidivism in balancing those considerations with a defendant's liberty interests *when Internet usage was related to the offense for which the defendant was convicted.*") (emphasis added), *cert. denied*, 132 S. Ct. 2773 (2012).  Nor does it relate to "the history and characteristics of the defendant" because Tang has never committed an offense over the Internet and his prior conviction for assault with intent to commit sexual abuse did not involve any use of a computer or the finding of the minor victim online.  18 U.S.C. § 3553(a)(1).  Deterrence is only marginally promoted by an Internet ban on an individual who has never used computers for illicit purposes nor shown a proclivity to do so in the future, even though, as the Government points out, the Internet is often used for such purposes.  18 U.S.C. § 3553(a)(2)(B); *see also Pepper v. United States*, 131 S. Ct. 1229, 1239–40 (2011) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual . . . .") (citation and quotation marks omitted).  Lastly, restricting Tang's access to a computer has the potential to stifle any "educational and vocational training" Tang may need, so this factor weighs against imposing an Internet ban.  18 U.S.C. § 3553(a)(2)(D).  Although Internet bans are often reasonable conditions of release for sex offenders, the Sentencing Guidelines

No. 12-20043

explicitly state that they are reasonable when the defendant used a computer in the underlying offense, which Tang did not do here.  U.S. SENTENCING GUIDELINES MANUAL § 5D1.3(d)(7)(B) (2012).  That the ban may be limited insofar as Tang may gain access to the Internet after requesting permission does not change the requirement that the condition be "reasonably related" to the § 3553 factors, a showing that has not been made.  *See* 18 U.S.C. § 3583(d)(1).  Therefore, we hold the district court abused its discretion in imposing this blanket ban on all Internet use absent permission from a probation officer.

### C

Tang appeals the condition that he "participate in a mental health program—treatment program and/or sex offender treatment program provided by the registered sex offender treatment provider, as approved by the United States Probation Office."  Tang acknowledges he has had past problems with alcoholism and depression.  For that reason, he does not dispute that mental health treatment is a reasonable condition of his supervised release.  Rather, his challenge is directed at certain aspects of the condition.  Specifically, he points to (1) the physiological testing, (2) the sex offender treatment, (3) the mandatory nature of the treatment, (4) the funding of the treatment, and (5) the waiver of confidentiality in counseling sessions.

The first three challenges are without merit because the district court included them only as options for the mental health professionals who treat Tang, not as mandatory conditions.  First, Tang complains that by including "physiological testing" in its written judgment regarding his sentence, the district court left available the troubling possibility that his treatment include

11

No. 12-20043

intrusive and objectionable procedures, like plethysmography.[4]  The language of the judgment, however, states that Tang's treatment "*may* include . . . physiological testing," not "*must* include" such testing (emphasis added).

Second, Tang asserts the district court did not realize it could mandate mental health treatment apart from sex offender treatment.  The Sentencing Guidelines contain two relevant provisions, one for mental health treatment and another for sex offender treatment.  *Compare* U.S. SENTENCING GUIDELINES MANUAL § 5D1.3(d)(5) (2012), *with* U.S. SENTENCING GUIDELINES MANUAL § 5D1.3(d)(7) (2012).  According to Tang, the district court did not have to—and would not have, had it understood its authority—mandated treatment by the sex offender treatment provider or left open the possibility of sex offender treatment, but rather should have mandated only mental health treatment.  The district court, however, included sex offender treatment only as an alternative or additional option to mental health treatment.  The fact that any mental health counseling would be administered by the sex offender treatment program does not mean it would necessarily become sex offender treatment, as the district

---

[4]"Penile plethysmograph testing is a procedure that involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses." *United States v. Weber*, 451 F.3d 552, 554 (9th Cir. 2006) (internal quotation marks omitted).  Plethysmography has become "routine in the treatment of sexual offenders and is often imposed as a condition of supervised release." *Id.*  In his original appellate brief, Tang mistakenly cited the district court's written judgment as including plethysmograph testing as part of the sex offender treatment that was imposed on him as a condition of supervised release.  In his Reply Brief, Tang recognizes that this was error and clarifies that the judgment at no point mentions plethysmography explicitly.  Nevertheless, Tang asserts plethysmography is a potential form of "physiological testing," and that, despite the lack of its explicit mention at the oral pronouncement of the sentence or in the written judgment, it is a distinct possibility that Tang could be subjected to plethysmography as a condition of his supervised release.

court instructed the program to administer "a mental health . . . treatment program *and/or* sex offender treatment program" (emphasis added). The district court simply left to the discretion of the treatment provider the decision of what type of treatment would be most effective; it did not mandate sex offender treatment.

Third, Tang asserts the treatment is, but should not be, mandatory. We are aided in our understanding of this issue by the district court's response to Tang's objection at sentencing, where the court indicated the treatment is "not mandatory . . . . Just if [the Probation Office] determine[s] after he gets out based on their own evaluation that they think he needs some mental health treatment, that they would be able to refer him." Accordingly, Tang's first three challenges are not ripe for review. *United States v. Carmichael*, 343 F.3d 756, 761 (5th Cir. 2003). If he is in fact required to submit to conditions such as invasive physiological testing procedures, he may then petition the district court for modification. 18 U.S.C. § 3583(e)(2); FED. R. CRIM. P. 32.1(c); *see United States v. Rhodes*, 552 F.3d 624, 628–29 (7th Cir. 2009) ("As the condition is stated, there is a fair amount of discretion regarding the techniques to be utilized. . . . [W]e would do well to await a more concrete presentation of the issue. Regardless, Rhodes can later petition the district court to modify the condition.") (citations omitted).

Fourth, Tang asserts the district court gave conflicting directions about who will bear financial responsibility for the treatment. Tang did not object to this aspect of the condition at sentencing; therefore, our review is for plain error. *Neal*, 578 F.3d at 272. During sentencing the district court stated, "The defendant will incur any costs associated with such sex offender treatment

## No. 12-20043

program and testing based on ability to pay as determined by the probation officer," but in its response to Tang's objections it said that "the probation department actually is the one who pays for it." The district court, however, could have reasonably thought that by tying payment to Tang's ability to pay, the Probation Office would actually pay for the treatment since Tang's counsel stated Tang "doesn't have much money." Because we give credence to the district court's response that "the probation department actually is the one [which would pay] for it," the district court did not plainly err in allocating the financial burden of the treatment.

Fifth, Tang asserts the confidentiality waiver is contrary to the fourth § 3553 factor.[5] Tang objected to the waiver at sentencing, so our review is for abuse of discretion. *Paul*, 274 F.3d at 165. Tang premises his challenge on his inability to share his personal thoughts with any psychotherapist without running the risk that they would be used against him at a revocation hearing. The waiver could, however, advance the purposes of the fourth § 3553 factor by allowing the probation officer to effectively monitor and aid in Tang's progress. Because the condition need only relate to one factor, *Weatherton*, 567 F.3d at 153, and the waiver could aid in deterrence, the district court properly imposed this condition. *See United States v. Dupes*, 513 F.3d 338, 344–45 (2d Cir. 2008) (affirming confidentiality waiver condition on plain error review (citing *Unites States v. Lopez*, 258 F.3d 1053, 1057 (9th Cir. 2001) and *United States v. Cooper*, 171 F.3d 582, 587 (8th Cir. 1999))). Therefore, the district court did not abuse its discretion by imposing the confidentiality waiver condition.

---

[5] A special condition of supervised release can be reasonably related to "provid[ing] the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D); *see* 18 U.S.C. § 3583(d)(1).

14

No. 12-20043

## D

Tang appeals the restriction on contact with minors, including his own children, and on dating persons with minor children without approval from a probation officer. Tang asserts the restriction on dating in the written judgment conflicts with the oral pronouncement of sentence, which restricts cohabitation but not dating. He asserts the restriction on contact with minors, including children of his own, is overbroad and not reasonably related to the § 3553 factors.

In the oral pronouncement the district court stated, "The defendant shall not cohabitate with anyone who has children under the age of 18 unless approved in advance by the probation officer." The written judgment, however, states, "The defendant shall not *date or* cohabitate with anyone who has children under the age of 18 unless approved in advance by the probation officer" (emphasis added). Since Tang did not have the opportunity to object to the dating restriction at the time of sentencing (as it had not yet been pronounced), we review for abuse of discretion rather than plain error. *United States v. Bigelow*, 462 F.3d 378, 381 (5th Cir. 2006). In *Bigelow*, we held where there is a conflict between the oral pronouncement and the written judgment, the oral pronouncement controls. *Id.* at 381. If the written judgment simply clarifies an ambiguity in the oral pronouncement, we look to the sentencing court's intent to determine the sentence. *United States v. Warden*, 291 F.3d 363, 365 (5th Cir. 2002). Here, the oral pronouncement conflicts with the written judgment by adding a new restriction, as cohabitation generally concerns Tang's residential life and dating generally concerns Tang's social life. *See Bigelow*, 462 F.3d at 381; *see also United States v. Vega*, 332 F.3d 849, 852–53 (5th Cir. 2003)

15

No. 12-20043

(explaining defendant's "constitutional right to be present at sentencing" is reason for ensuring oral pronouncement controls when written judgment adds condition).  Accordingly, the district court abused its discretion by including an additional restriction in the written judgment that was not part of the oral pronouncement of sentence.

Tang asserts the restriction on contact with minors is a greater deprivation than reasonably necessary and unrelated to the § 3553 factors.  In particular, Tang asserts his prior conviction does not evince a generalized inappropriate interest in children that would justify a restriction on his parenting decisions as a deterrent to potential future criminal activity.[6]  Our review is for abuse of discretion because Tang objected to this condition at sentencing.  *Paul*, 274 F.3d at 165.

The restriction on contact with minors is reasonably related to the § 3553 factors.  First, it is reasonably related to Tang's history, specifically his conviction for assault of a minor with intent to commit sexual abuse.  Second, it is reasonably related to deterrence and protecting the public, as "Congress has made clear that children . . . are members of the public it seeks to protect by permitting a district court to impose appropriate conditions on terms of supervised release." *United States v. Rodriguez*, 558 F.3d 408, 417 (5th Cir. 2009).  Lastly, the restriction is not a greater deprivation than reasonably necessary as Tang can request permission to have contact with minors (or cohabitate with someone having minor children).  *See* 18 U.S.C. § 3583(d)(2).

---

[6]It is not clear in the record whether Tang currently has children of his own.

No. 12-20043

## E

Tang asserts the district court unconstitutionally delegated its authority to the Probation Office by giving the Office discretion over the length of Tang's mental health or sex offender treatment and Tang's contact with minors.[7] We review this challenge for plain error because Tang did not object to the delegation at his sentencing. *Neal*, 578 F.3d at 272. We addressed a similar challenge to the Probation Office's discretion over counseling in *United States v. Bishop*, and we held any error in the limits of "a district court's authority to delegate to a probation officer the determination of whether and to what extent a convicted defendant on supervised release must participate in counseling" was not plain. 603 F.3d 279, 281 (5th Cir. 2010). In addition, we addressed a similar challenge to the Probation Office's discretion over contact with minors in *United States v. Rodriguez*:

> Probation officers have broad statutory authority to advise and supervise persons on supervised release to improve the releasees' conduct and lives, and to "perform any other duty that the court may designate." *See* 18 U.S.C. §§ 3601, 3603(3), (10). In Rodriguez's case, the district court recognized the association and residence restrictions should be flexible, and accordingly designated to the probation officer the duties to advise and supervise Rodriguez with respect to these restrictions.

558 F.3d 408, 414–15 (5th Cir. 2009) (footnote omitted). Like in *Rodriguez* and *Bishop*, Tang's challenges do not succeed in showing plain error on the part of the district court. *Rodriguez*, 558 F.3d at 417; *Bishop*, 603 F.3d at 281.

---

[7]Tang also asserts the district court unconstitutionally delegated its authority by giving the Probation Office discretion over Tang's Internet use, but we do not address this assertion because we hold the Internet ban is not reasonably related to the § 3553 factors. *See* Part III.A, *supra*.

17

No. 12-20043

## IV

In summary, we AFFIRM the mental health or sex offender treatment condition and the restriction on contact with minors and VACATE the Internet ban and dating restriction.