**REVISED MARCH 16, 2015**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30357

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SEALED JUVENILE,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

March 13, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Louisiana

Before BENAVIDES, SOUTHWICK, and COSTA, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

This appeal concerns a 15-year-old juvenile who has been sentenced to detention and a subsequent period of juvenile delinquent supervision in connection with a conviction for abusive sexual contact with a minor who had not attained the age of 12 years. In this appeal, we review several special conditions imposed for juvenile delinquent supervision, a matter of first impression.

No. 14-30357

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Juvenile is a 15-year-old male who suffers from Oppositional Defiant Disorder and Bipolar Disorder, Type I, Mixed, with suicidal ideations and hallucinations. On November 3, 2013, while living on a military base with his family, the Juvenile had sexual contact with a four-year-old child. Because the offense occurred on a military base, he was charged in a sealed juvenile information with an act of juvenile delinquency by engaging or attempting to engage in a sexual act with a person who had not attained the age of 12 years, in violation of 18 U.S.C. §§ 2241(c), 5032 (2012). He pleaded guilty pursuant to a plea agreement to the lesser included offense of abusive sexual contact with a minor who had not attained the age of 12 years, in violation of 18 U.S.C. § 2244(a)(5) (2012) and § 5032.

A probation officer issued a predispositional report that described the offense conduct. The Juvenile admitted that he lied on top of the victim, that both had their pants around their ankles, that he placed his mouth on the victim's vagina, that he planned to put his penis into her vagina but changed his mind just before his sister entered the room, and that his erect penis was above the victim's vagina while he was lying on top of her. The victim stated that the Juvenile had rubbed her with his hand in "the middle" and indicated toward her vaginal area. The victim's five-year-old brother, who was present during the offense, indicated that the Juvenile "bit and licked the victim on her butt."

After describing behavioral problems that included physical outbursts of anger and getting into fights with others, the report said the following about other sexually inappropriate behavior besides the offense conduct:

> In the last year, the juvenile's problems transformed from being anger oriented to being sexually oriented. His parents indicated that he became obsessed with sex, and looking up sexual material on the internet. They found notes to and from various girls at

2

school in which the juvenile discusses having sexual intercourse with the girls. He also asked his sister to engage in sexual activity with him, and aggressively held her down.

The report used the 2013 Sentencing Guidelines and calculated the advisory guidelines range as if the Juvenile was an adult. The report recommended a base offense level of 30 under U.S.S.G. §§ 2A3.1, 2A3.4, because the offense involved a criminal sexual act. Four levels were added under U.S.S.G. § 2A3.1(b)(2) because the victim was under the age of 12 years. With a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), the total offense level was 31. Because he had no prior criminal history, his criminal history score was I. With an offense level of 31 and a criminal history category of I, the advisory guidelines range was 108 to 135 months of imprisonment if the Defendant had been an adult. However, under 18 U.S.C. § 5037(c)(1) (2012) and the plea agreement, the maximum sentence that he could receive was detention until he reached 21 years of age and juvenile delinquent supervision until he reached 21 years of age. Defense counsel did not object to the report, but did file a dispositional memorandum concerning sentencing, which included as attachments, among other things, a copy of a report of a local mental health treatment facility explaining the Juvenile's history, diagnosis, and prognosis, and a letter from the Juvenile's parents.

The district court adjudicated the Juvenile as a juvenile delinquent and sentenced him to 18 months in the Garza County Juvenile Treatment Center in Post, Texas (where he is currently detained), and to a term of juvenile delinquent supervision "until his 21st birthday, in a non-secure facility such

as AMIKids in Sandoval, New Mexico."[1] In addition to the mandatory and standard conditions of supervision, the district court imposed numerous special conditions of supervision.[2] Specific conditions at issue in this appeal are ones restricting the Juvenile's contact with children, choice of occupation, ability to loiter near certain places, and use of computers and the Internet. The Juvenile timely appealed.

## II. APPLICABLE LAW

This Court has recognized that district courts have broad discretion in imposing conditions of supervised release, subject to statutory requirements.[3] Under 18 U.S.C. § 3563, a court may provide discretionary conditions "to the extent that such conditions are *reasonably related* to the factors set forth in section 3553(a)(1) and (a)(2) and to the extent that such conditions involve *only such deprivations of liberty or property as are reasonably necessary* for the purposes indicated in section 3553(a)(2)." 18 U.S.C. § 3563(b) (2012) (emphasis added). Under 18 U.S.C. § 3553(a)(1), a sentencing court is to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1) (2012). Under § 3553(a)(2), the court is to consider:

> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;

---

[1] Based on some clarification during oral argument, we are under the impression that it is undetermined how long the Juvenile will stay in the non-secure facility, and that it is possible that he might be released from the non-secure facility prior to his 21st birthday.

[2] The special conditions at issue in this appeal will apply when the Juvenile is at the non-secure facility, and if and when he is released from the non-secure facility, until his 21st birthday.

[3] The statutory provisions discussed in this section govern probation for adult offenders and also apply to juveniles on juvenile delinquent supervision. 18 U.S.C. § 5037(d)(3) (2012).

No. 14-30357

> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

The district court may, under § 3563(c), "modify, reduce, or enlarge the conditions of a sentence of probation at any time prior to the expiration or termination of the term of probation."

## III. DISCUSSION

On appeal, the Juvenile makes three major arguments. First, he argues that the district court failed to give reasons at the sentencing hearing for its decision to impose the special conditions, and thus failed to explain how the conditions were reasonably related to the factors in § 3553(a). Second, regarding the work, loitering, and computer and Internet conditions, the Juvenile argues that the special conditions of supervised release are not reasonably related to the goals of sentencing. Third, as to all the special conditions at issue before us, the Juvenile argues that the conditions were greater deprivations of liberty or property than reasonably necessary for the purposes indicated in § 3553(a)(2). We first discuss whether the district court failed to adequately provide reasons for imposing the special conditions, and then the special conditions themselves.

### A. District Court's Explanation for Imposing Special Conditions

For each of the special conditions, the Juvenile argues that the district court did not give any reasons for imposing the conditions at the sentencing hearing, and thus failed to explain how the conditions were reasonably related to the factors of § 3553(a). Because this issue was not specifically raised before the district court, we review for plain error. *See United States v. Alvarado*, 691 F.3d 592, 598 (5th Cir. 2012). Plain-error review involves four steps:

No. 14-30357

> First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings. Fourth and finally, if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation marks, brackets, and citations omitted).

The Juvenile has not been able to meet this high standard. Even though the district court did not provide reasons during the sentencing hearing, it did provide a statement of additional facts in the judgment to explain the imposition of these special conditions. In that statement, the district court gave the following reasons for the sentence imposed:

> The juvenile defendant J.C.C. is adjudicated delinquent for a very serious sexual offense, in which he forced a sexual act upon a four year old child. Had his sister not walked into the room, he may have had sexual intercourse with the victim. He has acted out sexually towards his sister, and is aggressive towards his siblings. He continues to try to lure his sister into his room, when he knows that this is not acceptable. He also has a history of serious mental health issues, including but not limited to suicidal ideations and hallucinations.

In addition, the district court noted that the sentencing decision was based on the recommendation of the U.S. Probation Department of the District of New Mexico, which "has an extensive history of working with juvenile offenders," and that the Bureau of Prisons had agreed with that recommendation.

Given that the district court's statement refers to the nature of the offense at hand, as well as the Juvenile's history of serious mental health

6

issues, we can conclude that the district court considered the factors under § 3553(a). Because the Juvenile has not shown that providing reasons during the sentencing hearing would have changed the outcome of the case, no plain error has occurred here. *See United States v. Mondragon-Santiago*, 564 F.3d 357, 364-65 (5th Cir. 2009); *see also United States v. Gore*, 298 F.3d 322, 325-26 (5th Cir. 2002) (addressing the articulation requirement of § 3553(c) under plain-error review and finding that the district court's written explanation for departing from the sentencing guideline was "sufficient to allow meaningful appellate review" such that no plain error occurred). We now consider each of the special conditions at issue before us.

### B. Contact Condition

Special Condition 6 states, "The juvenile must not have contact with children under the age of 16 without prior written permission of the Probation Officer. He must immediately report unauthorized contact with children to the Probation Officer." Because the Juvenile specifically objected to this special condition, we review for abuse of discretion. *See United States v. Rodriguez*, 558 F.3d 408, 412 (5th Cir. 2009). That is, we determine "whether the district court imposed conditions that are substantively unreasonable, and, therefore, abused its discretion." *Id.*

The Juvenile argues that the restriction is a much greater deprivation of liberty or property than reasonably necessary for the purposes of § 3553(a)(2) for a number of reasons. First, he argues that the age cut-off is arbitrary because it was set at 16 despite any indication in the record that the offense involved anyone except the victim, who was four years old. Second, he argues that the restriction is overbroad considering it could have been limited to children closer in age to the victim, and considering the restriction would apply to the Juvenile's siblings and prevent him from returning home.

No. 14-30357

As to the challenge for arbitrariness, the record does not explicitly state how the district court settled on age 16 as the relevant age for the contact restriction. But the predispositional report does show, as noted in Part I, *supra*, that the Juvenile has a history of sexually inappropriate behavior directed toward other children, including his 12-year-old sister and girls at school who are likely close to his age. Because of this history of inappropriate conduct with children closer to 16 years old, and because "district courts have broad discretion in establishing conditions for supervised release," *United States v. Miller*, 665 F.3d 114, 132 (5th Cir. 2011), we do not find the age cut-off to be arbitrary.

Turning to the Juvenile's challenge that the restriction is overbroad and would deprive him of much needed interaction with peers, the Government argues that any interest in associating with children his own age is outweighed by the need to protect children, and that the condition is warranted in light of the Juvenile's history and risk he poses to children. We agree with the Government. While it is important to ensure that the Juvenile is set on a path to becoming a healthy, productive, law-abiding citizen—one who is able to appropriately engage with and have healthy relationships with peers—such that recidivism does not occur,[4] we must also account for the justifiable concerns at the time of sentencing regarding the Juvenile's contact with children. Considering the threat posed by the Juvenile, as shown not only by the act that formed the basis of his conviction but also other inappropriate

---

[4] The Juvenile is currently receiving counseling and medication for his illness, and will continue to receive rehabilitative treatment at the non-secure facility. We note that this condition does not prevent the Juvenile from attending a school that is also attended by children under 16, so long as he obtains permission from the probation officer. We also note that this restriction "does not encompass chance or incidental encounters with children." *United States v. Paul*, 274 F.3d 155, 166 (5th Cir. 2001) (analyzing prohibition of "direct and indirect contact with minors" as condition of adult offender's supervised release).

No. 14-30357

behavior toward his sister and other children, and recognizing that the district court may modify this condition (and any of the conditions before us) under § 3563(c) should it conclude that the Juvenile no longer poses a risk to children, we AFFIRM the district court's imposition of this condition.

### C. Occupation Condition

Special Condition 7 states, "The juvenile is restricted from engaging in an occupation where he has access to children, without prior approval of the Probation Officer." Because the Juvenile did not specifically object to this special condition, we review for plain error. *See Alvarado*, 691 F.3d at 598.

The Juvenile argues that the occupation condition is not reasonably related to the factors of § 3553(a) because his offense bore no relation to work. While this is true, there is nevertheless a strong interest in preventing the Juvenile's access to children, even in his employment, and so we find that the Juvenile fails to establish plain error here.

The Juvenile argues that the condition imposed a much greater deprivation of liberty or property than reasonably necessary because he "will likely be unable to find employment since most employers of juveniles also employ other juveniles." Even if this were true, this would not provide a basis for finding plain error. As the Government points out, the Juvenile will be able to seek an exception from his probation officer, and then be free to pursue any employment opportunities after he turns 21. The Juvenile also argues that the condition is overbroad because he "could have, instead, been required to have adult supervision at a workplace where there are other minors." While this may be a reasonable alternative to what was actually imposed, making the condition subject to reasonable dispute, it is not a challenge that satisfies plain-error review. *See Puckett*, 556 U.S. at 135. Finding no clear or obvious deviation from a legal rule, we AFFIRM the imposition of this condition.

No. 14-30357

### D. Loitering Condition

Special Condition 8 states, "The juvenile must not loiter with[in] 100 feet of school yards, parks, playgrounds, arcades, or other places primarily used by children under the age of 16." Because the Juvenile specifically objected to this special condition, we review for abuse of discretion. *See Rodriguez*, 558 F.3d at 412.

The Juvenile argues that the restriction is not reasonably related to the factors in § 3553(a) because his offense had no relation to school. We agree with the Government, however, that the Juvenile's history of sending sexually explicit letters to girls at school means that he poses a threat to children at school and other places children might frequent. On this basis, we conclude that the restriction is reasonably related to the goal of protecting the public.

The Juvenile argues that the restriction is a much greater deprivation of liberty or property than is reasonably necessary for the purposes of § 3553(a)(2) because (1) he will not be able to return to school without room for exceptions, (2) he will not be able to engage in essential functions of a member of society, and (3) he will not be able to establish any relationships with peers. He argues that the cumulative impact on his social and mental development requires finding an abuse of discretion.

Applying the common understanding of the word "loiter," we find no abuse of discretion as to this condition. The relevant definitions of "loiter" from *Merriam-Webster* are "to remain in an area for no obvious reason" and "to lag behind." *Loiter*, Merriam-Webster, http://www.merriam-webster.com/dictionary/loiter (last visited Feb. 20, 2015). With respect to the Juvenile's first challenge, the prohibition against loitering would not prevent the Juvenile from attending school because he would not be at a school to remain there for no obvious reason or to merely lag behind; he would be there to attend as a student. With respect to his second challenge—that the condition

10

will prevent him from engaging in essential functions of a member of society—the specific language of the condition suggests otherwise. The type of places delineated as well as the limiting language of the condition imply that this condition would not restrict the Juvenile from going to a shopping center or anywhere else where children may be present, but rather from loitering near places *primarily used by* children under 16. Finally, regarding the Juvenile's third challenge, this condition will not prevent him from establishing *any* relationships with peers. The condition leaves open the possibility for him to go to—and even loiter near—places primarily used by people aged 16 and over. Since the Juvenile will be around 16 or 17 years old when he leaves the detention center and moves to a non-secure facility, this condition will not prevent him from interacting with people around his own age. Finding no abuse of discretion here, we AFFIRM the imposition of this condition.

### E. Computer and Internet Conditions

The special conditions restricting the Juvenile's use of computers and the Internet—all challenged on appeal—are as follows:

> (13) The juvenile shall not possess or use a computer with access to any "on-line computer service" at any location without the prior written approval of the probation office. The defendant must allow the Probation Officer to install appropriate software to monitor the use of the Internet.

> (14) The juvenile must submit to search of person, property, vehicles, business, computers and residence to be conducted in a reasonable manner and at a reasonable time, for the purpose of detecting sexually explicit material at the direction of the Probation Officer. He must inform any residents that the premises may be subject to a search.

> (15) The juvenile shall consent to the United States Probation Office conducting periodic unannounced examinations of his computer, hardware, and software which may include retrieval and copying of all data from his computer. This also includes the

removal of such equipment, if necessary, for the purpose of conducting a more thorough inspection.

(16) The juvenile shall consent, at the discretion of the United States Probation Officer, to having installed on his computer, any hardware or software systems to monitor his computer use. The juvenile understands that the software may record any and all activity on his computer, including the capture of keystrokes, application information, Internet use history, em-mail [sic] correspondence, and chat conversations. Monitoring will occur on a random and/or regular basis. The defendant further understands that he will warn others of the existence of the monitoring software placed on his computer. The defendant understands that the probation officer may use measures to assist in monitoring compliance with these conditions such as placing tamper resistant tape over unused ports and sealing his computer case and conducting a periodic hardware/software audit of his computer.

(17) The juvenile shall maintain a current inventory of his computer access including but not limited to any bills pertaining to computer access; and shall submit on a monthly basis any card receipts/bills, telephone bills used for modem access, or any other records accrued in the use of a computer to the probation officer.

(18) The juvenile shall provide to the probation officer all copies of telephone bills, including phone card usage, all credit card uses, and any other requested financial information to verify there have been no payments to an Internet Service Provider or entities that provide access to the Internet.

Because the Juvenile specifically objected to these special conditions, we review for abuse of discretion. *See Rodriguez*, 558 F.3d at 412.

The Juvenile contends that these conditions are not reasonably related to the factors in § 3553(a) because his offense did not involve the use of a computer or the Internet. He relies on *United States v. Salazar*, 743 F.3d 445 (5th Cir. 2014), and *United States v. Tang*, 718 F.3d 476 (5th Cir. 2013) (per curiam), cases in which this Court found that Internet restrictions were not reasonably related to the § 3553(a) factors for defendants convicted of failing

to register as sex offenders. We find that both cases are distinguishable from this one. *Salazar* is distinguishable because, in that case, there was "[n]othing in [the defendant's] history [that] suggest[ed] that sexually stimulating materials fueled his past crimes," 743 F.3d at 452, whereas here the record shows that the Juvenile's obsession with sex was probably fueled by what he found on the Internet. In *Tang*, this Court found that an Internet ban was not reasonably related to the § 3553(a) factors because it was not related to the offense of failing to register as a sex offender, and because the defendant's prior conviction for assault with intent to commit sexual abuse did not involve the use of a computer. 718 F.3d at 484. The Juvenile seeks to rely on the latter reason in *Tang* to argue that the special condition imposed here is also not reasonably related to the § 3553(a) factors. While it is true that, like in *Tang*, the Juvenile did not use the Internet to carry out the offense, it is nevertheless not difficult to infer that the sexually explicit materials accessed by the Juvenile online influenced his subsequent behavior. Because of this, we conclude that the conditions are reasonably related to the circumstances of the offense and the Juvenile's history.

The Juvenile gives four specific objections that these conditions are much greater deprivations of liberty or property than reasonably necessary: (1) the restrictions are not limited to sexually explicit conduct; (2) every keystroke and other action on his computer will be monitored; (3) the conditions allow the probation officer to enter the Juvenile's home and seize his computer at any time; and (4) the Juvenile will have to give access to his financial records even when there is no suspicion of any improper behavior.

In arguing that the restrictions are overbroad in substantive scope, the Juvenile argues that "[r]equiring *prior* written approval for everyday functions that use the internet[] will entomb Juvenile Appellant and prevent him from job hunting, conducting class assignments, or even emailing with his doctors

and psychiatrists."[5] We must recognize that access to computers and the Internet is essential to functioning in today's society. The Internet is the means by which information is gleaned, and a critical aid to one's education and social development. To the extent these conditions require the Juvenile to request permission every time he needs to use a computer, or every time he needs to access the Internet, we find them to be unreasonably restrictive. Moreover, the important interest underlying these computer and Internet restrictions is in preventing access to sexually explicit materials. There is already a separate condition that restricts access to sexually explicit materials, and that has not been challenged.[6] Concluding that Special Condition 13 is unreasonably restrictive, the district court is instructed that Special Condition 13 is not to be construed or enforced in such a manner that the Juvenile would be required to seek prior written approval every single time he must use a computer or access the Internet. We intend this to allow for oversight of the Juvenile's computer and Internet usage, but not with the heavy burden of requiring prior written approval every time he must use a computer or access the Internet for school, health, work, recreational, or other salutary purposes. Accordingly, we AFFIRM subject to our interpretation and determination set out herein.

The Juvenile's second challenge is that it is overbroad to monitor every action on his computer.[7] This Court has ruled both ways in cases addressing monitoring conditions imposed on adult offenders. *Compare United States v.*

---

[5] The Juvenile also asserts that the restrictions will require him to obtain prior written approval before using a cell phone or digital kiosk, but the conditions do not have such broad application as they are worded. Under these conditions, the Juvenile will still be able to use a cell phone that does not have Internet access as well as a store kiosk without prior approval.

[6] That condition states, "The juvenile shall be prohibited from viewing or possessing any material including photographs, images, books, writings, drawings, videos or video games, depicting and/or describing sexually explicit conduct or child pornography as defined in 18 U.S.C. [§] 2256."

[7] This challenge implicates Special Conditions 13 and 16.

*McGee*, 559 F. App'x 323, 328-30 (5th Cir.) (per curiam), *cert. denied*, 135 S. Ct. 130 (2014) (affirming condition that required adult defendant to "install filtering software on any computer he possesses or uses which will monitor/block access to sexually oriented websites"), *with United States v. Fernandez*, 776 F.3d 344, 346-48 (5th Cir. 2015) (per curiam) (discussing similar cases like *McGee* and finding abuse of discretion in imposing software-installation condition when neither the defendant's failure-to-register offense nor his criminal history had any connection to computer use or the Internet). What is most distinguishable about this case from the other cases is that Appellant is a mentally ill juvenile. Given the potential influence of the Internet on his sexual development, and the apparent influence the Internet has already had on his behavior, it is in the interests of deterrence and rehabilitation to monitor his access to technology. We AFFIRM the monitoring provisions because we recognize that these provisions are useful in ensuring that the Juvenile complies with the restrictions against accessing sexually explicit materials.

As to the Juvenile's third challenge—that the probation officer could seize his computer at any time[8]—the Government responds that the district court was authorized to impose such a condition because the Juvenile is subject to the registration requirements of the Sex Offender Registration and Notification Act ("SORNA").[9] The district court did not impose a SORNA

---

[8] Though not explicitly stated, this challenge seems to be directed at Special Condition 15. The Government's response addresses a "search and seizure" condition, which seems to implicate Special Conditions 14 and 15. We consider both conditions here.

[9] If required to register under SORNA, § 3563(b)(23) permits the district court to impose a condition requiring that the defendant

> submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of probation or unlawful conduct by the person, and by

registration requirement. We need not determine whether the Juvenile would be subject to SORNA because, regardless of this, the search-and-seizure conditions are reasonably related to the Juvenile's history of accessing inappropriate materials on the Internet. They are also reasonably necessary, as an additional safeguard to supplement the monitoring provisions, to ensure that the Juvenile does not access prohibited materials and to check for whether he does access them. Thus, we AFFIRM the imposition of the search-and-seizure conditions.

Finally, the Juvenile complains generally that the special conditions are overbroad insofar as they require him to provide his financial records, and that this constitutes an extreme and unreasonable deprivation of liberty and property. While his objections are not detailed and provide little argument, we assume that they relate to Special Conditions 17 and 18. We reject his contentions with regard to Special Condition 17 as this condition relates to the monitoring of his computer and Internet use, which we upheld above. With respect to Special Condition 18, we have already interpreted Special Condition 13 so as not to be unreasonably restrictive on the Juvenile's use of the Internet. Because he may use the Internet, it only follows that he should be able to make payments for the proper use of the Internet. Because Special Condition 18's purpose is to verify that there have been no payments to an internet service provider, and payment for proper use should be made by the Juvenile, and because there is no other basis to justify the restriction imposed by Special Condition 18, Special Condition 18 is unreasonably restrictive. We MODIFY the special conditions by striking Special Condition 18.

---

any probation officer in the lawful discharge of the officer's supervision functions.

No. 14-30357

**IV. CONCLUSION**

For the foregoing reasons, we AFFIRM AS MODIFIED with instructions that any enforcement of the conditions be subject to our interpretation, determinations, and instructions contained herein. In affirming, we reiterate that the Juvenile may seek modifications to any of the conditions under § 3563(c), and that the district court may lessen the burden of these restrictions if the Juvenile's behavior improves over time.