# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 11, 2021

Lyle W. Cayce
Clerk

No. 20-61073

United States of America,

*Plaintiff—Appellee*,

*versus*

Jonathan Hilliam McDougal,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:15-CR-26-1

Before Jones, Southwick, and Engelhardt, *Circuit Judges*.

Per Curiam:*

Jonathan McDougal challenges a condition of supervised release imposed with his revocation sentence. Finding no error of fact or law, we AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-61073

## I. BACKGROUND

McDougal pled guilty in 2016 to one count of distribution of a detectable amount of cocaine base—"crack"—in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).  The district court sentenced McDougal to 28 months in prison and three years of supervised release.  Additionally, McDougal was required to participate in a "program of testing and/or treatment for alcohol or drug abuse as directed by the probation officer." Supervised release began on April 4, 2018.

In February 2020, McDougal's probation officer petitioned the court for an arrest warrant.  The petition alleged that McDougal violated a mandatory condition of his supervised release by committing a state felony. Specifically, it asserted that between May 1, 2018 and July 1, 2018, McDougal embezzled $7,924.91 belonging to the state of Mississippi.  McDougal pled guilty in state court to the offense in November 2019 and was sentenced to ten years in prison and five years of supervised release.[1]

At the revocation hearing, McDougal admitted committing the offense.  He explained that he used his state-issued fuel card to fuel other people's cars in exchange for additional money.[2]  He claimed this was necessary to support eight children and pay outstanding debts.  The money allegedly went towards food for his kids, child support, gas, and rent— McDougal stated that after those expenditures, he often only had $30 to $50

---

[1] He was eligible for release after serving three years imprisonment.  McDougal was subsequently released by the state on August 12, 2020 and was remanded to federal custody.

[2] To do so, McDougal had to "cut deals" where he was only getting a portion of the value of the gas.  For example, he would put $40 worth of fuel in another person's vehicle in exchange for $20.  McDougal admitted to converting the entire $7,924.91 (it was charged to the card) but only received $3000 to $4000 in actual cash.

No. 20-61073

for each two-week period.  McDougal's counsel also noted that two of his children lived with him and that McDougal had not failed any drug tests while on supervised release, so "it [was] not an issue of whether or not this money was going towards drugs."  The district court noted that McDougal's lack of proof for how he spent the money was "a negative," and it was likely that he did "something else with the money."  The court recessed the hearing to allow the defense time to gather evidence of expenditures.

McDougal then presented two witnesses:  his sister, Shama Harris, and one of his children, Jontaveyun Jones.  Harris testified that McDougal had been living with her and paying for gas, food, and expenses for two of his children.  She also saw him give money to the children's mother and send money to his other children out of state.  McDougal also helped pay for food and utilities at the house.  Harris asserted that she did not know of any drug use by McDougal, had never heard of him using drugs, and that he had stopped drinking because he "didn't like the taste of it."  Finally, Harris testified that McDougal had paid over $1000 in household expenses while living there, but she didn't know what he did with all of the embezzled money.  Jones testified that McDougal paid for food, clothes, and school sports equipment.  He further stated that McDougal had given money directly to his mother and that he had lived with McDougal for nearly a year.  But Jones conceded that he did not know how much McDougal had paid in child support or whether he was current on payments.

The district court then moved to sentencing.  The court first noted that the embezzlement occurred less than a month after McDougal's release from federal custody and that "one has to conclude that he hardly was rehabilitated since in less than a month's time after being committed to supervised release . . . he committed a felony."  The court then explained that McDougal had failed to adduce evidence as to what became of the nearly $4000 that he received.  Having received no testimony from the children's

mothers, and no testimony that he attempted to satisfy his outstanding child support obligations, the court "heard nothing to persuade it that this defendant spent any significant money on his children, nor that he spent any significant money with his sister when he was staying there free with her and her husband." The court concluded that it had no idea what McDougal did with the money since it found none of the testimony credible, and it was "troubled by the short interval between this defendant's release from incarceration and his determination to reenter the realm of crime." Finally, the court observed that McDougal had been "quite deep in the drug trade" and now "quite deep in embezzlement." The court then sentenced McDougal to ten months imprisonment and 26 months supervised release.

In addition, the court ordered that "based on [his] history of drug abuse, [McDougal] must participate in an alcohol/drug abuse treatment program and follow the rules and regulations of the program." The court explained that it "didn't see very much about [McDougal's] potential use of drugs, but certainly [his] possession and sale of drugs is evident."[3] Accordingly, the court ordered that McDougal be evaluated and observed— this was to be supervised by the probation officer. But if there was no drug problem then the probation officer was not to execute this portion of the order. The court later reiterated that it was "ordering treatment if the probation officer deems it necessary . . . [b]ut that decision will lie with the probation officer."

McDougal objected that "[t]here's nothing before the Court to say that he has a potential for drug use. Maybe ten years ago. There's nothing certainly since he's been on supervised release for drug use. There's been nothing while he was on pretrial release prior to his sentence in 2016."

---

[3] The court recognized that McDougal had not tested positive for drugs.

No. 20-61073

According to the defense, there was "no evidence here before the Court to require such a treatment requirement, and so we'd object to the sentence as a whole but that one as well specifically."

The court denied the objection, stating "your protest is a frivolous protest if he doesn't have a problem, because I've already said the probation officer does not have to impose those conditions if it does not have a problem." The court also added that it has to look out for public safety, and it was not aware of what McDougal had done with the money: "The Court doesn't know whether he invested in some drug trade. The Court doesn't know whether he picked up with his prior partners and purchased some drugs. The Court doesn't know any of that." The prosecution then attempted to clarify that the court was only ordering that McDougal be evaluated, and that the court and probation officer could take further steps based on that. The court agreed "[b]ased on the evaluation and what the probation officer knows based on that." McDougal timely appealed the sentence.

## II. DISCUSSION

McDougal raises two issues on appeal. First, he challenges the district court's imposition of required participation in an alcohol and drug abuse treatment program as a special condition of his supervised release. Second, McDougal asserts that the district court impermissibly delegated the decision of whether to require treatment to the probation officer. Neither argument prevails.

### A. Substance Abuse Treatment Condition

This court reviews a preserved challenge to a special condition of supervised release for abuse of discretion. *United States v. Caravayo*, 809 F.3d 269, 272 (5th Cir. 2015). "District courts have 'wide discretion in imposing terms and conditions of supervised release.'" *United States v.*

No. 20-61073

*Dean*, 940 F.3d 888, 891 (5th Cir. 2019) (quoting *United States v. Paul*, 274 F.3d 155, 164 (5th Cir. 2001)).  The sentencing court "may impose any condition it deems appropriate" subject to two limitations.  *Id.*  First, the condition must reasonably relate to at least one of the four statutory factors enumerated in 18 U.S.C. § 3553(a):

> (1) the nature and characteristics of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (3) the need for the sentence imposed to protect the public from further crimes of the defendant; and (4) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*United States v. Bree*, 927 F.3d 856, 859–60 (5th Cir. 2019).  Second, "'the condition must be narrowly tailored such that it does not involve a greater deprivation of liberty than is reasonably necessary to fulfill the purposes set forth in' § 3553(a)." *Dean*, 940 F.3d at 891 (quoting *United States v. Scott*, 821 F.3d 562, 570 (5th Cir. 2016)).

Further, the district court must make factual findings in terms of the § 3553(a) factors to justify the special condition.  *United States v. Salazar*, 743 F.3d 445, 451 (5th Cir. 2014).  But "[i]n the absence of a factual finding, a court of appeals may nevertheless affirm a special condition 'where the [district] court's reasoning can be inferred after an examination of the record.'"  *Caravayo*, 809 F.3d at 275 (quoting *Salazar*, 743 F.3d at 451).

McDougal principally argues that the special condition here fails at step one.  It is not reasonably related to any of the factors because there is no evidence that he is using drugs or that any of the embezzled funds went toward drugs.  Without this evidence, the condition does not relate to deterrence, public protection, or medical care.  Last, he claims, the district court failed to provide factual support for the condition.

In rebuttal, the government argues that the condition is properly related to McDougal's past history of alcohol and marijuana abuse, and his prior conviction for possessing and selling drugs. The government keys in on the district court's concern that the embezzled money was used for drug purchases and argues that the court was in the best position to judge credibility.

The starting point here is determining what condition the court actually imposed. The written judgment states that McDougal "must participate in an alcohol/drug abuse treatment program and . . . [t]he probation officer will supervise [] participation in the program." At sentencing, the court reiterated that McDougal "must participate" in a treatment program. Yet the court further stated that it wanted McDougal "evaluated and observed to see if [he] ha[s] a drug problem . . . . [I]f [he] do[esn't] have a drug problem, the probation officer will not execute this portion of the order."[4] The written judgment makes participation mandatory, but the verbal judgment appears to make initial participation (the evaluation and observation) mandatory and continued participation only required upon a determination that McDougal has a "drug problem." In a sense, the probation officer will either terminate treatment or escalate the intensity after the threshold determination.

"If the in-court pronouncement differs from the judgment that later issues, what the judge said at sentencing controls." *United States v. Diggles*,

---

[4] To be sure, though the district court states that "the probation officer will not execute" the treatment condition, evaluation and observation are necessary prerequisites—meaning that the condition will be initially executed. The probation officer will then cease to execute the treatment condition if McDougal does not have a drug problem. That the district court used the words "evaluated and observed" makes no difference. Evaluation and observation are as much a component of a treatment program as any subsequent therapy.

957 F.3d 551, 557 (5th Cir. 2020) (en banc).  A conflict exists where "the written judgment broadens the restrictions or requirements of supervised release from an oral pronouncement," *United States v. Mireles*, 471 F.3d 551, 558 (5th Cir. 2006), or "impos[es] a more burdensome requirement," *United States v. Bigelow*, 462 F.3d 378, 383 (5th Cir. 2006).  Here they conflict,[5] so the oral pronouncement trumps and continued participation in the treatment program is contingent on whether McDougal actually has a "drug problem."

That condition reasonably relates to the § 3553(a) factors.  First, McDougal has a past conviction for a drug offense, and the original Presentence Report indicated that he had previously been addicted to alcohol and marijuana.  Second, the current offense involved the embezzlement of nearly $8000 (over $3000 of which McDougal received), and the district court rejected McDougal's explanation of where that money went.  The court drew a reasonable connection between the unaccounted-for funds and the possibility that McDougal may have a drug problem.  If McDougal does have a drug problem, substance abuse treatment would reasonably constitute appropriate medical care.  By requiring a threshold determination that McDougal actually has a drug problem before mandating continued participation, the condition is narrowly tailored.

Here the district court made explicit, and the record supports, its concern that McDougal may have fallen into a drug problem.  That is sufficient to trigger an inquiry.  Whether McDougal is found to be clean or

---

[5] If the two judgments do not actually conflict, and instead "the written judgment simply clarifies an ambiguity in the oral pronouncement, [this court] look[s] to the sentencing court's intent to determine the sentence." *United States v. Tang*, 718 F.3d 476, 487 (5th Cir. 2013) (per curiam).  Intent is determined by examining the record as a whole. *United States v. Tanner*, 984 F.3d 454, 456 (5th Cir. 2021).  This approach leads to the same result.  The record clearly indicates that the district court intended to limit the extent of treatment depending on whether McDougal actually had a drug problem.

not, the condition accounts for the result of the inquiry. Accordingly, the district court did not abuse its discretion in imposing this drug treatment condition.

## B. Impermissible Judicial Delegation

"The imposition of a sentence, including the terms and conditions of supervised release, is a core judicial function that cannot be delegated." *Sealed Appellee v. Sealed Appellant*, 937 F.3d 392, 400 (5th Cir. 2019) (quoting *United States v. Franklin*, 838 F.3d 564, 568 (5th Cir. 2016)). The district court must have "the final say" on whether to impose a condition. *United States v. Huerta*, 994 F.3d 711, 716–17 (5th Cir. 2021) (quoting *United States v. Medel-Guadalupe*, 987 F.3d 424, 431 (5th Cir. 2021)). Thus, it is not permissible for a district court to delegate the decision "whether a defendant will participate in a treatment program," but "a district court may properly delegate to a probation officer decisions as to the details of a condition of supervised release."[6] *Sealed Appellee*, 937 F.3d at 400 (internal quotation marks and citations omitted).

Consistent with this distinction, a probation officer's authority can permissibly extend to the "modality, intensity, and duration" of a treatment condition. *Medel-Guadalupe*, 987 F.3d at 431. Here, the district court plainly required treatment and left only the duration and intensity of that treatment to the probation officer. If McDougal is found not to have a condition warranting further treatment, then the probation officer is instructed not to require treatment. Since the district court exercised its "final say" over the

---

[6] There are additional limitations on the delegation of the details of a condition when it involves a "significant deprivation of liberty." *United States v. Martinez*, 987 F.3d 432, 434–36 (5th Cir. 2021); *see also Medel-Guadalupe*, 987 F.3d at 430–31. This is not implicated here.

No. 20-61073

initial treatment decision, delegating questions of duration and intensity was permissible. *See Huerta*, 994 F.3d at 716–17.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.